IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **BALTHASER ONLINE, INC.,**<br><br>**Plaintiff**<br><br>**vs.**<br><br>**NETWORK SOLUTIONS, LLC, THE KNOT, INC., INSIDER GUIDES, INC., CYWORLD INC., FRIENDFINDER NETWORKS, INC., HI5 NETWORKS, INC., FREEWEBS, INC., GAIA INTERACTIVE INC., FRIENDSTER, INC., EBAUM'S WORLD, INC., PUMA INTERNATIONAL, LLC, IMEEM, INC., SCRIPPS NETWORKS, LLC, LIVE JOURNAL INC., NIKE, INC., NING, INC., SWATCHBOX TECHNOLOGIES, INC., ELECTRONIC ARTS INC., HOOKUMU INC., MEREDITH CORP., and CAPCOM USA, INC.,**<br><br>**Defendants.** | **NO.    2:08-cv-430** |

**CALIFORNIA DEFENDANTS' JOINT**
**MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

**Page**(s)

FACTUAL BACKGROUND ........................................................................................... 3

    A.    Balthaser Online is Located in California.................................................. 4

    B.    The California Defendants' Operations are Centered in the Northern District of California .............................................................................. 5

        1.    Cyworld................................................................................... 6

        2.    Capcom ................................................................................... 6

        3.    Electronic Arts ....................................................................... 7

        4.    FriendFinder California, Various, and Global Alphabet .......... 8

        5.    Friendster ............................................................................... 8

        6.    Gaia ........................................................................................ 9

        7.    Hi5.......................................................................................... 9

        8.    imeem................................................................................... 10

        9.    Live Journal ......................................................................... 10

        10.    Ning...................................................................................... 11

    C.    The Remaining Original Defendants are Scattered Nationwide and Have No Relevant Connections to the Eastern District of Texas................................. 12

    D.    The New Small Business Defendants ........................................................ 13

        1.    Art Star Design LLC............................................................. 13

        2.    Interaria ............................................................................... 13

        3.    Booker Entities, Inc ............................................................. 13

        4.    Big Jump Media, Inc ............................................................ 14

        5.    "ShameBlame.com"............................................................. 14

    E.    Third Party Prior Art Is Located in the Northern District of California ............. 14

ARGUMENT ........................................................................................................... 15

    A.    Venue is Proper in the Northern District of California....................... 16

    B.    Private Interest Factors Weigh Heavily in Favor of Transfer to the Northern District of California for the Convenience of Parties and Witnesses ................................................................................. 17

        1.    Accessibility to Sources of Proof Favors Transfer to the Venue where the Moving Defendants All Reside............................... 17

        2.    The Availability of Compulsory Process Favors Transfer to the Venue where Identified Third Party Prior Art has been Located. .......... 19

# TABLE OF CONTENTS
### (continued)

**Page**

3.    The Convenience and Cost of Attendance of Witnesses Favors Transfer to the Venue where the Majority of the Witnesses Reside........ 19

4.    The Consideration of All Other Practical Problems is Neutral............... 23

C.    Public Interest Factors Also Favor Transfer to the Northern District of California In the Interest of Justice ...................................................................... 23

1.    Administrative Concerns Are Neutral. .................................................. 23

2.    The Northern District of California Has an Interest in Deciding Claims Between its Residents .................................................................. 24

3.    The Northern District of California is Familiar with Patent Cases.......... 25

4.    Transfer Will Not Present Any "Conflict of Laws" Issues..................... 25

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Barton v. Young*,
   144 F. Supp. 2d 685 (E.D. Tex. 2001) .................................................................................. 20

*Ernst Muhlbauer KG v. Bisco, Inc.*,
   1998 U.S. Dist. LEXIS 18570 (N.D. Tex. Nov. 19, 1998) ................................................. 16

*In re TS Tech USA Corp.*,
   2008 U.S. App. LEXIS 26409 (Fed. Cir., Dec. 29, 2008) ........................................... passim

*In re Volkswagen of Am., Inc*,
   545 F.3d 304 (5th Cir. 2008) ...................................................................................... passim

*Minka Lighting, Inc. v. Trans Globe Imports, Inc.*,
   2003 WL 21251684, (N.D. Tex. May 23, 2003) ................................................................ 16

*Odom v. Microsoft, Corp.*,
   No. 08-331 (E.D. Tex., Jan. 30, 2009) ............................................................ 16, 22, 24, 25

*Partsriver, Inc. v. Shopzilla, Inc.*,
   No. 07-440 (E.D. Tex., Jan. 30, 2009) ......................................................... 1, 16, 18, 22

*Proshot Golf, Inc. v. Leading Edge Techs., Inc.*,
   1996 U.S. Dist. LEXIS 21695 (N.D. Tex. Oct. 31, 1996) .................................................. 16

*QR Spex, Inc. v. Motorola, Inc.*,
   507 F. Supp. 2d 650 (E.D. Tex. 2007) .............................................................................. 25

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
   917 F.2d 1574 (Fed. Cir. 1990) ........................................................................................ 16

**STATUTES**

28 U.S.C. § 1391 ............................................................................................................................ 3

28 U.S.C. § 1391(c) ...................................................................................................................... 16

28 U.S.C. § 1400(b) ...................................................................................................................... 16

28 U.S.C. § 1404(a) ............................................................................................................. passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 21 ........................................................................................................................... 3

Twelve California-based defendants to the present action, the relevant business operations of each of which are located chiefly within the Northern District of California, respectfully move the Court pursuant to 28 U.S.C. § 1404(a) for an order transferring the patent infringement action brought by California plaintiff Balthaser Online, Inc. ("Balthaser Online") to the United States District Court for the Northern District of California.[1]  All remaining defendants named in the original complaint (the "original defendants") have joined or do not oppose this motion.[2]  *See* Notice of Joinder and/or Non-Opposition to Motion to Transfer Venue ("Joining Motion"), No. 2:08-cv-430, (February 3, 2009).

Transfer is warranted here in light of recent decisions of the Fifth Circuit, the Federal Circuit and this Court.  The Federal Circuit, applying Fifth Circuit law to a patent case, recently issued a writ of mandamus ordering transfer of venue to a more convenient forum.  *See In re TS Tech USA Corp.*, 2008 U.S. App. LEXIS 26409, at *5 (Fed. Cir., Dec. 29, 2008) ("*TS Tech*") (applying *In re Volkswagen of Am., Inc*, 545 F.3d 304 (5th Cir. 2008) (*en banc*) ("*Volkswagen*")). In that case, convenience required transfer to the venue where the majority of the parties, identified key witnesses, and physical and documentary evidence were located.  *See id.* slip op. at 11.  Just last week, this Court ordered transfer of a multi-party patent case to the Northern District of California based on the "overall" regional nature of the case.  *Partsriver, Inc. v. Shopzilla, Inc.*, No. 07-440 (E.D. Tex., Jan. 30, 2009).[3]  Here, ***all*** of the moving parties—which

---

[1] The twelve moving parties are Cyworld, Inc. ("Cyworld"), Capcom USA ("Capcom"), Electronic Arts Inc. ("EA"), FriendFinder California ("FFC"), Friendster, Inc. ("Friendster"), Gaia Interactive, Inc. ("Gaia"), Global Alphabet, Inc. ("Global Alphabet"), Hi5 Networks, Inc. ("Hi5"), imeem, Inc. ("imeem"), Live Journal Inc. ("Live Journal"), Ning, Inc., ("Ning") and Various, Inc. ("Various") (collectively, the "California defendants").
[2] The parties joining the motion are Nike, Inc., Insider Guides, Inc., Freewebs, Inc., Meredith Corp., Scripps Networks, LLC, Swatchbox Technologies, Inc., Ebaum's World, Inc., and Hookumu Inc., The parties which do not oppose transfer are The Knot and Network Solutions, Inc.  Puma International, LLC and FriendFinder Networks, Inc., have been voluntarily dismissed.  *See* 2:08-cv-430, Dk. No. 128 (Jan. 16, 2009) and Dk. No. 122 (Jan. 15, 2009), Orders of Dismissal.  Puma North America, Inc., which was added by the FAC and has not yet appeared, has indicated that it does not object to transfer of the action to the Northern District of California.
[3] A copy of this Order is attached as Exhibit G to the Declaration of Candace J. Morey.

comprise the majority of the original parties named in this suit—are located in the Northern District of California, the vast majority of their key witnesses reside in the Northern District of California, and the vast majority of physical and documentary evidence concerning them is located in the Northern District of California.  Further, ***not one*** of the original defendants to this action has any relevant business operations, likely witnesses, or physical evidence in the Eastern District of Texas.  Even plaintiff Balthaser Online and Neil Balthaser, the named inventor of the patent in-suit, are located in the Northern District of California.  This case simply has no meaningful connection to the Eastern District of Texas.

Nevertheless, in apparent reaction to *TS Tech* and defendants' stated intent to seek transfer to the Northern District of California, Balthaser Online hastily amended its complaint to target a few small Texas businesses.  The new businesses include literally "mom and pop" operations, run principally out of the business owners' homes and generating a few thousand dollars in net income.  This transparent attempt to generate *some* connection between this action and the Eastern District of Texas merely confirms that no such connection existed in the original complaint.  Nor does that situation change much even under the amended complaint—only one of the newly added defendants is even alleged to reside in the Eastern District; a second is a ***California-based*** corporation with a secondary mailing address in Plano, Texas.  Further, if Balthaser Online's tactic were to succeed, businesses in the Eastern District could expect to become regular targets of litigation by patent infringement plaintiffs in need of "anchors" to tie a case to a venue that would otherwise fail to satisfy the dictates of § 1404(a).[4]  That would place a heavy economic burden on this District's industries and businesses.  Regardless, even with the

---

[4] All of the newly added parties have told counsel for the California defendants that they will join the Motion to Transfer to the Northern District of California or will not object to transfer, except for "shameblame.com," which counsel have been unable to reach.  Moreover, one of the new defendants, Booker Entities, Inc., is a California corporation with an office in Beverly Hills, California.

newly added defendants, the balance of §1404(a) factors still favors transfer.[5]

"The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *Volkswagen*, 545 F.3d at 313. Balthaser Online has abused its privilege here by initially suing almost two dozen companies in a district with no relevant contact to those companies. Balthaser Online then compounded that abuse by implementing a transparent ploy designed to circumvent Fifth Circuit and Federal Circuit precedent by burdening tiny Texas businesses with expensive patent litigation. There can be no question that the Northern District of California is the real center of gravity of this action, and that no § 1404(a) factor weighs in favor of maintaining the claim in this venue. The transferee venue is "clearly more convenient" than the venue chosen by the plaintiff, and the motion to transfer should therefore be granted. *TS Tech,* 2008 U.S. App. LEXIS 26409 at *5.

## FACTUAL BACKGROUND

California-based Balthaser Online filed its First Amended Complaint ("FAC") in this action on January 15, 2009, alleging infringement of United States Patent No. 7,000,180 (the "'180 patent") by twenty-eight separate defendants. The Complaint alleges that each and every defendant infringes "by, among other thing [sic], operating websites covered by" the '180 patent. FAC ¶¶ 36-63. The individual named defendants are engaged in a wide variety of wholly unrelated businesses, except for three corporate affiliates.[6] Balthaser Online has not alleged any coordination among the defendants relating to the alleged infringement, or any similarity in the

---

[5] To the extent that any of the newly-named defendants objects to the motion to transfer, it may be appropriate for the Court to sever Balthaser Online's claims against the objecting parties for the purpose of allowing transfer to the Northern District of California of the remaining claims. "Parties may be dropped or added by order of the court on motion of any party . . . at any stage of the action and on such terms as are just." Fed. R. Civ. P. 21. Defendants accordingly reserve their rights to raise this issue as is necessary and at the appropriate time.

[6] Global Alphabet, FFC, and Various are corporate affiliates.

design, development, origin, or operation of the defendants' accused web sites.

The First Amended Complaint substituted different corporate entities for two defendants that have been voluntarily dismissed. Specifically, in lieu of Florida-based FriendFinder Networks, Inc., Balthaser Online named three California-based corporate entities as defendants. And Puma North America, Inc., supplanted Puma International, Inc. Balthaser Online also added five new parties to its already bloated action—all small businesses that allegedly have locations in Dallas, Austin, or Plano, Texas, although one is a California corporation alleged to have its principal place of business in the Los Angeles area. The new defendants include a Christian social networking community, three web site design shops with only 1 or 2 employees each, and a video-sharing web site claiming 325 *total* members. FAC ¶¶ 25-29. To date, none of these defendants has appeared in this action and three have not yet been served.[7]

## A.    Balthaser Online is Located in California.

Plaintiff Balthaser Online has no apparent connection to the Eastern District of Texas, but does have significant ties to the Northern District of California. Balthaser Online's web site identifies its headquarters and its only "location" as San Francisco, in the Northern District of California, although it is a Delaware Corporation with an alleged principal place of business in Placerville, California (in the Eastern District of California). Decl. of Candace J. Morey ("Morey Decl.") ¶ 3, Ex. B; FAC ¶ 1. According to the online weblog (or "blog") of Neil Balthaser, the sole named inventor of the patent-in-suit and CEO of Balthaser Online, Mr. Balthaser resides in Oakland, California, which is also in the Northern District of California. Morey Decl. ¶ 4, Ex. C.

---

[7] As of January 27, 2009, Balthaser Online does not appear to have even identified an address for effectuating service on defendant "shameblame.com" and the clerk has not issued a summons. *See* 2:08-cv-430, Dkt. Entry No. 126 (Jan. 16, 2009) Balthaser Online also has apparently not served Interaria or Booker Entities, according to their owners, who have been contacted by counsel for the California defendants.

**B.    The California Defendants' Operations are Centered in the Northern District of California.**

The twelve moving defendants all reside in the Northern District of California and have their principal places of business there, facts of which Balthaser Online is clearly aware.  *See* FAC ¶¶ 5-9, 11-12, 15, 17, 19, 21, 24.  As is documented in greater detail below, all or the majority of the relevant business operations of each moving defendant is located in the Northern District of California—including web site development, finance, marketing and sales.  The significant majority of likely witnesses, documents, and physical evidence for the moving California defendants is, therefore, located in the Northern District of California.

Significantly, ***not one*** of the California defendants has any relevant connection to the Eastern District of Texas, as is attested to in the supporting declarations filed herewith for each defendant.  None of the California defendants is incorporated in Texas.  Not one California defendant keeps documents or physical evidence in the Eastern District of Texas.  None has identified any likely witnesses who reside in the Eastern District of Texas.  While the California defendants' web sites are accessible in Texas, they are equally available everywhere in the United States.

Indeed, with one possible minor exception, ***not one of the California defendants has any potentially relevant connection anywhere in the state of Texas***.  EA maintains a single, small studio in Austin.  But that studio is in the process of developing its first video game, and it is impossible to tell from the meager infringement allegations in the complaint whether any of its activities would be relevant to this action.[8]  In any event, EA's main campus is in Redwood City in the Northern District of California, and the bulk of its web site development goes on there.[9]

---

[8] EA also has a small sales offices in Dallas, consisting of 6 employees, but it does not work on designing or developing web sites.  Schatz Decl. ¶ 7.

[9] Although Capcom has two retail sales employees in Mesquite and Austin, Texas, those employees' job

1.     <u>Cyworld</u>

Cyworld operates an online community for trusted friendships and creative communication.  Declaration of Jeong Il Seo ("Seo Decl.") ¶ 3.  Cyworld is a California corporation that has its principal place of business in San Francisco, California.  *Id.* ¶ 4.  All of Cyworld's United States employees work at Cyworld's office in San Francisco, California.  *Id.* ¶ 6.  In addition, all of Cyworld's information and documents related to the design, development, content, or implementation of Cyworld's web site in the United States are also located at Cyworld's office in San Francisco, California.[10]  *Id.* ¶ 7.  Thus, all relevant Cyworld documents and witnesses are located in the Northern District of California.  Cyworld has no business facilities or employees in the United States located outside of California, including Texas.  *Id.* ¶ 8.  Cyworld does not have any employees, offices, or documents in Texas, and besides the fact that its web site may be accessed nationwide, including in Texas, Cyworld has no connection at all to the state of Texas or the Eastern District of Texas.  *Id.* ¶ 9-10.

2.     <u>Capcom</u>

Capcom is a leading international developer and manufacturer of video games, and has produced a number of highly successful and popular titles.  Declaration of Christian Svensson in Support of Capcom ("Svensson Decl.") ¶ 3.  Capcom is a California corporation and has its principal place of business in San Mateo, California, in the Northern District of California.  *Id.* ¶ 5.  Capcom's primary business is video games, but it also operates web sites.  *Id.* ¶ 3-4.  Most of the Capcom employees whose work is related to Capcom's U.S.-based web sites, including web site design and development, work at and reside near Capcom's office in San Mateo.  *Id.* ¶ 6.

---

responsibilities relate entirely to Capcom's video game business, not the accused web sites.  EA and Capcom also sell video games throughout the United States, including Texas, but those products are not web sites and thus are entirely unrelated to this action.

[10] Some employees and/or documents may also be located in Korea.  Seo Decl. ¶ 7.

Similarly, most of the files and documentation relating to web site design, development, sales, marketing, and finances in Capcom's possession are maintained in San Mateo. *Id.* ¶ 7. Capcom has employees and an office in Los Angeles, California, where some relevant documents and employees may be located, although the majority are located in northern California. *Id*. ¶ 5-8.

Capcom does not have any employees or keep any files outside of California that could possibly be relevant to this action and does not maintain any offices in Texas. *Id.* ¶ 8. Capcom employs one retail data analyst and one sales person who live within the Northern District and Western District of Texas respectively; however, their work relates entirely to Capcom's video game products. *See id.* ¶ 9. The retail data analyst and sales person have no responsibility for or involvement with Capcom web sites. *Id.*

### 3.    Electronic Arts

EA is a world leading interactive entertainment software company. Declaration of Jacob J. Schatz ("Schatz Decl.") ¶ 3. EA develops, publishes, and distributes interactive software worldwide for video game systems, personal computers, cellular handsets and the Internet. *Id.* EA is a Delaware corporation that has its principal place of business in Redwood City, California. *Id.* ¶ 5. EA's main campus is located in Redwood City, California, and a substantial portion of EA's web sites containing rich media content are developed at the Redwood City campus. *Id.* ¶ 6. EA's financial records pertaining to such web sites are located at its corporate headquarters in Redwood City. *Id.* ¶ 8. In addition to its Redwood City campus, EA also has other U.S. studios located in California, Florida, Georgia, North Carolina, Utah, and Virginia. *Id.* ¶ 7. EA also has a small studio located in Austin, Texas that is in the process of developing its first video game. *Id.* Regardless, no documents are located in the Eastern District of Texas pertaining to any accused web sites, and no likely witnesses who would be needed to testify on issues of non-infringement or damages live in or near the Eastern District of Texas. Other than

the fact that its web sites may be accessed from the Eastern District of Texas—and that it sells unrelated products there—EA has no connections to that district. *Id.* ¶ 9.

> 4.     FriendFinder California, Various, and Global Alphabet

Three parties—FriendFinder California, Various, Inc., and Global Alphabet[11]—are corporate affiliates, each of which owns and operates one or more online social networking communities. Declaration of Rob Brackett in Support of FriendFinder California, Various, Inc., and Global Alphabet ("Brackett Decl.") ¶¶ 2, 4. Each of these three entities is a California corporation and operates entirely from its sole business office in Sunnyvale, California, in the Northern District of California. *Id.* ¶¶ 3, 6. All of the employees, and hence potential trial witnesses on the issues of non-infringement and damages, work in Sunnyvale and reside in the Northern District of California. *Id.* ¶ 6. All of the documents and evidence retained by the companies are located in Sunnyvale, and even the servers running the accused web sites are located in the Northern District of California. *Id.* ¶ 7. None of FriendFinder California, Various, Inc., or Global Alphabet has any offices, employees, documents or operations in any judicial district in Texas. *Id.* ¶ 8.

> 5.     Friendster

Friendster operates and maintains social networking sites. Declaration of David Jones ("Jones Decl.") ¶ 2. Friendster's principal place of business is in Mountain View, California, and it is incorporated in Delaware. *Id.* ¶ 2. Friendster's only U.S. offices are in Mountain View and San Francisco, California, which are both in the Northern District of California. *Id.* ¶ 4. All of Friendster's U.S. employees who are working or who have worked on any aspect of web site design, development, content or implementation of Friendster's web sites have worked from

---

[11] Balthaser Online amended the Original Complaint in this action to delete its claim regarding FriendFinder Networks, Inc. It substituted these three subsidiaries of FriendFinder Networks, Inc. Brackett Decl. ¶ 2.

these two northern California locations. *Id.* All of Friendster's documents and evidence in the U.S. that relate to the accused web sites are located in the San Francisco Bay area, in the Northern District of California. *Id.* ¶ 5. Friendster has no facilities or employees outside of California in the United States, and none in Texas. *Id.* ¶ 7. Friendster has some employees outside of the United States, all of whom work from locations in Australia and Asia. *Id.* ¶ 6.

      6.    <u>Gaia</u>

Gaia is a virtual world and online social community. Declaration of Elaine Kitagawa ("Kitagawa Decl.") ¶ 4. Gaia is a Delaware corporation that has its principal place of business in San Jose, California. *Id.* ¶ 3. All but one of Gaia's employees who currently work or who have worked on any aspect of the design, development, content, or implementation, of Gaia's accused web sites work from Gaia's office in San Jose, California. *Id.* ¶ 6. The remaining employee is an engineer who lives in Gresham, Oregon, which is approximately 1500 miles closer to the Northern District of California than the Eastern District of Texas. *See id.* All of Gaia's information and documents related to the design, development, content, or implementation of the accused web sites are also located at Gaia's offices in San Jose, California. *Id.* ¶ 7.

Gaia has no business facilities located outside of California, including in the state of Texas. *Id. ¶ 8.* Similarly, Gaia has no employees who work from or reside in Texas. *Id.* ¶ 10. Gaia does employ individual sales persons who are located in New Jersey (one employee), New York (two employees), and Santa Monica, CA (one employee). *Id.* ¶ 9.

      7.    <u>Hi5</u>

Hi5 operates a free social networking web site. Declaration of Ramu Yalamanchi in Support of Motion to Transfer Venue ("Yalamanchi Decl.") ¶ 3. Hi5 is a California corporation that has its principal and only place of business in the Northern District of California. *Id.* ¶ 5. All documents and information related to the design, development, content, or implementation of

the Hi5 web site are located in the Northern District of California. *Id*. ¶ 6. All Hi5 executives and employees who might serve as witnesses live and work in the Northern District of California, and it would be a significant inconvenience to them to travel to the state of Texas. *Id*. ¶ 7-8. Hi5 has no business facilities or employees located outside California. *Id*. ¶ 5. The Hi5 web site offers the same functionality and features for users everywhere in the United States regardless of their location, and use of the Hi5 web site by individuals residing in the Eastern District of Texas does not differ in any meaningful way from use of the Hi5 web site by individuals residing in any other judicial district. *Id*. ¶ 4.

8.    imeem

imeem is a social network that enables users to interact and form connections online. Declaration of William Growney ("Growney Decl.") ¶ 4. imeem is a Delaware corporation that has its principal place of business in San Francisco, California. *Id.* ¶ 3. Substantially all of imeem's web development occurs at its offices in San Francisco. *Id.* ¶ 6. Indeed, all of imeem's employees who are working or who have worked on any aspect of the design, development, content, or implementation of imeem's accused web sites work from imeem's offices in San Francisco. *Id.* ¶ 7. Similarly, all of imeem's information and documents related to the design, development, content, or implementation of the accused web sites are also located at imeem's offices in San Francisco, California. *Id.* ¶ 9. imeem has no other offices in the United States, except a sales office in New York. *Id.* ¶ 6. None of imeem's employees work from or reside in Texas, and no documents or evidence is in Texas. *Id.* ¶¶ 8, 9. Other than that its web site may be accessed nationwide, including in Texas, imeem has no connection to the state of Texas or the Eastern District of Texas. *Id.* ¶ 11.

9.    Live Journal

Live Journal is a 9-year-old online community and social network. Declaration of Sergei

Komarov ("Komarov Decl.") at ¶ 4.  Live Journal is a California corporation that has its

principal place of business in San Francisco, California.  *Id.* ¶ 3.  The majority of Live Journal's

employees work at Live Journal's offices in San Francisco, and it has no offices in the U.S.

outside of California.  *Id.* ¶ 6, 10.  Live Journal's current employees who have worked on the

design, development, content, or implementation of the accused web sites are located in San

Francisco or in Moscow, Russia.  *Id.* ¶ 8.  All of Live Journal's information and documents

related to the design, development, content, or implementation of the accused web sites are

located at Live Journal's offices in San Francisco or in Moscow, Russia.  *Id.* ¶ 9.

Live Journal has five employees who live and work outside California—in West

Virginia, Illinois, Georgia, South Dakota—but these employees are responsible for customer care

and do not work on web development.  *Id.* ¶ 7.  Live Journal also had a former engineer who

lived in Vermont and a former web site developer who lives in Oregon.  *Id.* 7-8.  Live Journal

has no employees who work from or reside in Texas and does not maintain any documents or

files in Texas.  *Id.* ¶ 11  Other than that its web site may be accessed nationwide, Live Journal

has no connection to the state of Texas or the Eastern District of Texas.  *Id.* ¶ 12.

10.  Ning

Ning is an online platform for users to create their own social networks.  Declaration of

Robert R. Ghoorah ("Ghoorah Decl.") ¶ 4.  Ning is a Delaware corporation that has its principal

place of business in Palo Alto, California.  *Id.* ¶ 3.  Nearly all of Ning's employees who are

working or who have worked on any aspect of the design, development, implementation, or

content of Ning's platform work from Ning's offices in Palo Alto.  *Id.* ¶¶ 6-7.  Also, all of Ning's

information and documents related to the design, development, implementation, or content of the

Ning platform are located at Ning's office(s) in Palo Alto, California.  *Id.* ¶ 8.  Ning has three

employees in the Atlanta, Georgia area and one in Spain who work on platform operational

support.  *Id.* ¶ 9.  Ning also employs one platform developer, one general and administrative

support person, and one marketing and business development person in the New York, New

York area, and one application developer in Lawrence, Kansas.  *Id.*  Finally, Ning has two

employees in the Los Angeles area who work on marketing and business development.  *Id.*[12]

    Ning has no employees who work from or reside in Texas.  *Id.* ¶ 10.  Other than the fact

that its online platform may be accessed nationwide, including in Texas, Ning has no connection

to the state of Texas or the Eastern District of Texas.  *Id.* ¶ 11.

    **C.**    **The Remaining Original Defendants are Scattered Nationwide and Have No Relevant Connections to the Eastern District of Texas.**

    Of the remaining original defendants to this action, Nike, Inc., is incorporated in Oregon

and has its principal place of business in Beaverton, Oregon.  *See* Joining Motion at 2 (Decl. of

Julianne R. Davis ¶ 3).  The last ten are located in other locations and, with the exception of two

corporations that both have their principal place of business within the District of Massachusetts,

no other two original defendants have their principal places of business within a common federal

judicial district.

    Further, none of the remaining original defendants to this action has any relevant

connection the Eastern District of Texas.  *See id.* at 2-3 (and declarations cited therein).  None is

incorporated in Texas, has any relevant business operations in the Eastern District of Texas, or

keeps documents or physical evidence in the Eastern District of Texas.  *See id.*  None of the

remaining original defendants has any employees in the Eastern District of Texas who would

possibly serve as witnesses to this infringement action.  *Id.*  At most, a handful of defendants sell

other retail products in the Eastern District of Texas that are not web sites and therefore are

---

[12] Ning has also contracted with an application developer in each of Canada, Australia, New Zealand and the UK, and it has previously contracted with one in Brazil to work on platform development.  *Id.* ¶ 9.

entirely unrelated to this action.[13]

### D.    The New Small Business Defendants.

#### 1.    Art Star Design LLC

Art Star Design LLC ("Art Star") has not appeared in this action, however, counsel for the moving defendants have contacted Art Star and are informed that it is a small, home-based business with one employee—the owner, Mr. Ryan Bishop.  According to Mr. Bishop, Art Star is a small web site design company incorporated in Delaware, has its only place of business at Mr. Bishop's home in Austin, Texas, and has a net income of less than $6,000 a year.  Mr. Bishop characterized Balthaser Online's action as "a nightmare" for his small company.  Mr. Bishop has informed counsel for the moving defendants that Art Star does not object to transfer of the action to the Northern District of California.

#### 2.    Interaria

Interaria has also not yet appeared in this action, but has been contacted by counsel for the moving defendants.  According to Interaria's owner, Mr. James Shields, Interaria has not yet been served.  Mr. Shields informed counsel that Interaria, a web site design company, is a sole proprietorship run from Mr. Shields's home and has only two employees—himself and his wife.  Mr. Shields indicated that he is extremely worried about the financial burden on his small business of having to defend against Balthaser Online's infringement allegations.  Mr. Shields has informed counsel for the moving defendants that Interaria does not object to transfer of the action to the Northern District of California.

#### 3.    Booker Entities, Inc.

Booker Entities, Inc. is a ***California*** corporation with its alleged principal place of

---

[13] For example, Nike has retail sales of athletic and fashion footwear and apparel and sports equipment in the Eastern District of Texas.  *See*  Joining Motion (Davis Decl. ¶ 10).

business in Beverly Hills, *California*.  FAC ¶ 27.  Booker Entities has not yet appeared in this

action, but has also been contacted by counsel for the moving defendants who spoke with the

owner, Mr. Brik Booker.  According to Mr. Booker, Booker Entities has not been served to date

and Mr. Booker is the company's only full-time employee.  Mr. Booker stated that he splits his

residence between southern California and Plano, Texas.  Mr. Booker has informed counsel for

the moving defendants that Booker Entities, Inc. does not object to transfer of the action to the

Northern District of California.

        4.     <u>Big Jump Media, Inc.</u>

Big Jump Media, Inc. has not yet appeared in this action.  Big Jump Media, Inc. is a

small "startup" company that operates an online Christian social network accessible at

http://www.godtube.com.  Morey Decl. ¶ 4, Ex. C.

        5.     <u>"ShameBlame.com"</u>

"ShameBlame.com" has not been served to date—indeed, the Court's clerk has not even

issued a summons for service.  Balthaser Online has not alleged any principal place of business

or even any known address for ShameBlame.com, and only asserts that it is "located in Austin,

Texas."  FAC ¶ 29.  However, it appears to be a video sharing web site that claims to have *325

total* members.  Morey Decl. ¶ 5, Ex. D.

**E.**    **Third Party Prior Art Is Located in the Northern District of California.**

The Northern District of California is a national hub for web site design and

development.  Numerous sources of prior art systems are likely to be located in the Northern

District of California.  The patent-in-suit relates to the design of rich-media applications for

Internet web sites, and defendants have already found prior art systems located in the Northern

District of California that they may assert to invalidate the patent-in-suit.

For example, defendants believe that products offered by Yahoo! may invalidate the

patent-in-suit, including Yahoo!'s online greetings which allowed users to create personal online greetings—with personal recordings and photos—before the application for the '180 patent was filed.  Morey Decl. ¶ 6; Ex. E.  Yahoo! is headquartered in Sunnyvale, California in the Northern District of California, which will likely be the location of relevant documents and witnesses who can testify regarding the scope and functionality of its prior art online greeting products.  These third-party witnesses are not subject to this Court's subpoena power, but could be compelled to testify at trial in the Northern District of California.  It also will undoubtedly be more convenient for such third party witnesses to testify in the Northern District of California—where they live— rather than traveling thousands of miles to testify in Texas.

## ARGUMENT

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  In evaluating transfer under § 1404(a), courts consider private and public interest factors, and no single factor is of dispositive weight.  *Volkswagen*, 545 F.3d at 315.

The Fifth Circuit has made it clear that a transfer is to be ordered where, as here, the transferee forum is "clearly more convenient" than the venue chosen by the plaintiff. *Volkswagen,* 545 F.3d at 315 (issuing writ of mandamus ordering transfer of action from the Eastern District of Texas); *see also TS Tech,* 2008 U.S. App. LEXIS 26409 at *5.  Balthaser Online's choice of venue is not a factor to be considered in this analysis:  "Fifth Circuit precedent clearly forbids treating plaintiff's choice of venue as a distinct factor in the §1404(a) analysis."  *TS Tech*, 2008 U.S. App. LEXIS 26409 at *7-8 (finding district court committed "key error" by weighing plaintiff's choice of venue as a factor, thereby giving it "inordinate weight").  Rather, the plaintiff's choice of venue corresponds to the burden the moving party must meet in order to demonstrate convenience of the transferee forum.  *Id.* (citing *Volkswagen*, 545 F.3d at

314 n.10).

      This Court and others applying the new *Volkswagen* and *TS Tech* decisions have granted transfer in patent cases where, as here, the vast majority of witnesses were located in another region or judicial district. *Partsriver*, No. 07-440 at 4 (granting transfer where plaintiff alleged infringement by operation of web sites located mostly in California); *Odom v. Microsoft, Corp.*, No. 08-331 (E.D. Tex., Jan. 30, 2009)[14] (granting transfer of patent case with no "relevant connection" to Eastern District of Texas other than availability of allegedly infringing products).[15]  In light of the extensive connections of the parties to the Northern District of California, the overall nature of this case is indisputably focused on the Northern District of California.  Accordingly, transfer should be granted because "there is nothing that ties this case to the Marshall Division except plaintiff's choice of venue."  *See Volkswagen,* 545 F.3d at 312.

**A.**     **Venue is Proper in the Northern District of California.**

      The threshold inquiry of whether venue is proper in the Northern District of California is easily addressed.  Venue in a patent infringement action is proper in the district where the defendant corporation resides, or where the defendant has (allegedly) committed acts of infringement and has a regular and established place of business.  28 U.S.C. § 1400(b).  For purposes of venue, a corporate defendant is deemed to "reside" in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.  28 U.S.C. § 1391(c);  *VE Holding Corp. v. Johnson Gas Appliance Co*., 917 F.2d 1574, 1584 (Fed. Cir. 1990) (incorporating 28 U.S.C. § 1391(c) into 28 U.S.C. § 1400(b)).

---

[14] A copy of this Order is attached as Exhibit F to the Declaration of Candace J. Morey.

[15] Moreover, even before the recent *Volkswagen* and *TS Tech* decisions, district courts in Texas have granted transfer to relocate a patent infringement action to the "center of gravity" of the claims—the place where the allegedly infringing product development, testing, research, production, and marketing and sales decisions occurred.  *Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, 2003 WL 21251684, at *2 (N.D. Tex. May 23, 2003); *see also Proshot Golf, Inc. v. Leading Edge Techs., Inc.*, 1996 U.S. Dist. LEXIS 21695, at *5 (N.D. Tex. Oct. 31, 1996) ("In a patent action, the preferred forum is the place where the allegedly infringing activity was centered."); *Ernst Muhlbauer KG v. Bisco, Inc.*, 1998 U.S. Dist. LEXIS 18570 (N.D. Tex. Nov. 19, 1998).

The moving parties are all residents of the Northern District of California, which is where each has a principal place of business.  Each of the California defendants has extensive contacts in the Northern District of California, which is the site of most of the design and development activities relating to the allegedly infringing web sites.  Accordingly, the Northern District of California is indisputably a venue in which Balthaser Online's patent infringement suit could have been filed.  *See TS Tech*, 2008 U.S. App. LEXIS 26409 at *6-7.  By contrast, several defendants (including six of the California defendants), in their answers to Balthaser Online's Original Complaint, deny that they are subject to personal jurisdiction in Texas, deny that venue is proper in the Eastern District of Texas, and assert lack of personal jurisdiction as an affirmative defense to Balthaser Online's action.  Thus, while a dispute exists as to the propriety of venue if this action is maintained in the Eastern District of Texas, there is no question that venue is proper in the Northern District of California, at least as to the moving defendants.[16]

> **B.** **Private Interest Factors Weigh Heavily in Favor of Transfer to the Northern District of California for the Convenience of Parties and Witnesses.**

The private interest factors strongly support transferring Balthaser Online's action to the Northern District of California.  The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *Volkswagen*, 545 F.3d at 315.

> 1.   <u>Accessibility to Sources of Proof Favors Transfer to the Venue where the Moving Defendants All Reside.</u>

The first private interest factor, the relative ease of access to sources of proof, weighs in favor of transfer because the substantial majority of the moving defendants' documentary and

---

[16] Moreover, all of the remaining original defendants agree that the Northern District of California is, on the whole, the most convenient venue for this action and either affirmatively move for or do not oppose transfer to that venue.

17

physical evidence is located in the Northern District of California, while none is located in the Eastern District of Texas.  The location of evidence in another district is "a meaningful factor in the analysis" notwithstanding advances in electronic transfer and storage of information. *Volkswagen* 545 F.3d at 316; *TS Tech*, 2008 U.S. App. LEXIS 26409 at *10.  In *TS Tech*, the Federal Circuit held that the district court erred in "reading out of the § 1404(a) analysis the factor regarding the relative ease of access to sources of proof" where all of the physical and documentary evidence was "far more conveniently located" near the transferee venue.  *Id.; see also Partsriver*, No. 07-440 at 4 (noting that "many documents related to this case are also located in California").  Similarly, most of the moving parties' documentary proof and physical evidence relating to Balthaser Online's infringement claims in this case are located in the Northern District of California.

For defendants FriendFinder California, Various, Inc., Global Alphabet, Cyworld, Hi5, and Friendster, their ***only*** U.S.[17] offices are in the Northern District of California, and accordingly that is the only judicial district in the United States in which documents and other evidence may be found.  Brackett Decl. ¶ 6-7; Seo Decl. ¶ 7-8; Yalamanchi Decl. ¶ 5-6; Jones Decl. ¶ 5, 7.  Live Journal has employees elsewhere, but all of the activities in the U.S. relevant to this action, including the accused web sites' design and development and related marketing, sales, and financial documentation, occurred at its offices within the Northern District of California, and it maintains no documents in Texas.  Komarov Decl. ¶ 9, 11.  All of Capcom's documents are maintained at its two offices in California, none are maintained in Texas, and the majority of documents that are expected to be relevant to this action are in San Mateo, in the Northern District of California.  Svensson Decl. ¶ 7.  Finally, for defendants Ning, EA, imeem,

---

[17]  Friendster does not maintain any other U.S. offices, but it does have employees who work from locations in Australia and Asia. Jones Decl. ¶ 6.

and Gaia, the majority of, or all, relevant activities and documents are located in the Northern District of California, and none of these defendants maintains any documents or other evidence in the Eastern District of Texas.  Ghoorah Decl. ¶ 7-8, 10; Schatz Decl. ¶ 6, 8; Growney Decl. ¶ 9-10; Kitagawa Decl. ¶ 7-8.  Because most, if not all, documents and physical evidence that will be used as the moving defendants' sources of proof are located in the transferee venue and none are located in the Eastern District of Texas, this factor strongly favors transfer.

### 2.    The Availability of Compulsory Process Favors Transfer to the Venue where Identified Third Party Prior Art has been Located.

The second private interest factor is the availability of compulsory process to secure the attendance of witnesses.  A venue that enjoys absolute subpoena power for trial is more convenient than a venue in which subpoenas will be subject to motions to quash.  *Volkswagen* 545 F.3d at 316.  This factor weighs in favor of transfer because the defendants have identified key prior art products located in Northern California, including online greeting card products offered by Yahoo! before the application for the '180 patent was filed.  Morey Decl. ¶ 6, Ex.E. The witnesses who can testify about these products will also likely reside in Northern California, where Yahoo! is located.  Additional third party prior art and witnesses are likely to be found in the Northern District of California, which is a national hub for web site development.  Transfer is thus favored because the Northern District of California can compel the likely Northern California-based non-party witnesses to attend trial, while the Eastern District of Texas cannot.

### 3.    The Convenience and Cost of Attendance of Witnesses Favors Transfer to the Venue where the Majority of the Witnesses Reside.

The third private interest factor, the convenience and cost of attendance for willing witnesses, strongly favors transfer.  When the distance between an existing and proposed venue is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.  *TS Tech*, 2008 U.S. App. LEXIS 26409 at *9-10

(finding clear error in district court's refusal to "considerably weigh this factor in favor of transfer" where the "identified witnesses would need to travel a significantly further distance from home to attend trial in Texas"). Further, "the convenience of witnesses may be considered 'the most powerful factor governing the decision to transfer a case.'" *Barton v. Young*, 144 F. Supp. 2d 685, 688 (E.D. Tex. 2001). The Northern District of California is indisputably a more convenient forum because the majority of the identified non-party and party witnesses live within the Northern District of California. In addition, two potential witnesses for the California defendants, in addition to a potential Nike witness, live in Oregon, approximately 1,500 to 1,700 miles closer to the Northern District of California than to the Eastern District of Texas. Before Balthaser Online's recent addition of small Texas businesses to the complaint, ***no*** likely witness had been identified who lives in the Eastern District of Texas.

At trial, each defendant will need to present as witnesses employees who work on web site design and development, engineering, and finance and marketing to defend against liability for infringement and claims for damages. Several defendants have ***no*** employees who reside outside of the Northern District of California. For Cyworld, FriendFinder California, Various, Global Alphabet, Friendster, and Hi5, their ***only*** U.S. offices are in the San Francisco Bay Area in the Northern District of California—in San Francisco, Sunnyvale, and Mountain View. Seo Decl. ¶ 6; Brackett Decl. ¶ 6; Jones Decl. ¶ 4; Yalamanchi Decl. ¶ 5, 7. For these six defendants, all of their U.S. employees work and reside in the Northern District of California and it is the ***only*** judicial district in the United States where their key witnesses could reside. It is an "obvious conclusion" that it is more convenient for their witnesses to testify at home. *Volkswagen*, 545 F.3d at 317.[18]

---

[18] Further, all of the Friendster employees who live outside of the U.S. and work on web site design and development reside in Australia or Asia, and accordingly it will still be slightly more convenient for them to travel

Further, while some California Defendants do have employees outside of the Northern District of California, all or the substantial majority of employees who develop and market web sites work in Northern California. imeem has a sales office in New York, but none of those employees' work is relate to web site design and development, and therefore none are likely to be called as witnesses at trial. Growney Decl. ¶ 6-7. A substantial number of employees who develop Electronic Arts' accused web sites work at its Redwood City campus, in the Northern District of California. Schatz Decl. ¶ 6. For Ning, the majority of all relevant witnesses are located in the Northern District of California, and no potential witnesses are in Texas. Ghoorah Decl. ¶ 7, 10.

For the remaining three California Defendants that have potential witnesses outside of the Northern District California, those witnesses reside in southern California or Oregon, which is much closer to the Northern District of California than Texas. The majority of Capcom's employees that are involved with the design, development, or any marketing of its U.S. based web sites live and work in the Northern District of California, but the remainder all work in Los Angeles and none are in Texas. Svensson Decl. ¶ 6. For Live Journal, all of the U.S. witnesses relevant to this action are located within the Northern District of California or in Oregon; none are in Texas. Komarov Decl. ¶ 7-8. Similarly for Gaia, all but one of Gaia's employees who currently work or who have worked on any aspect of the design, development, content, or implementation, of Gaia's web sites work at its office in San Jose, California. Kitagawa Decl. ¶ 6. Gaia also employs one engineer who lives in Gresham, Oregon, but has no employees who live or work from Texas. *Id.* ¶ 6, 10. Even if these potential witnesses are ultimately needed at trial, Northern California is still a vastly more convenient venue for them than the Eastern District of Texas pursuant to the 100-mile rule. *TS Tech* 2008 U.S. App. LEXIS 26409 at *8-9.

---

to the Northern District of California than the Eastern District of Texas. Jones Decl. ¶ 6.

Nor can Balthaser Online, which apparently resides in California, credibly assert that the Eastern District of Texas would be a more convenient forum for its own witnesses than the Northern District of California. *See Odom*, No. 08-331 at 9, n.4 (finding "no reason to address any considerations other than the fact that it would cost less in time and money for Plaintiff to attend trial in [proposed transferee venue], since that is where he resides."). It has no identified business connection to the Eastern District of Texas. Morey Decl. ¶ 2. From its only business location in San Francisco, its alleged principal place of business in the Eastern District of California, or Neil Balthaser's home in Oakland, travel to the Eastern District of Texas would be significantly more expensive and cumbersome than travel to the Northern District of California. Thus, even the convenience of Balthaser Online's witnesses weighs in favor of transfer. *See Partsriver*, No. 07-440 at 4 (noting that patent owner was California-based company).

Finally, Balthaser Online's attempt to tack together numerous unrelated, geographically diverse defendants and its last-minute attempt to tie this action to small Texas businesses cannot sway this factor against transfer. The overall convenience to the witnesses should favor transfer of an entire action to a venue where by far the largest number of likely witnesses are located. *See id.* (ordering transfer based on "overall" regional nature of case). The venue with by far the greatest overall connection to this case is indisputably the Northern District of California—even with the addition of small Texas business defendants.

Defendants have satisfied their burden of proof, and transfer should be granted, if the transferee venue is "clearly more convenient." *TS Tech*, 2008 U.S. App. LEXIS 26409 at *5. Defendants are not required to show that the § 1404(a) factors "substantially outweigh the plaintiff's choice of venue"—that would give "inordinate weight" to the plaintiff's choice. *Id; see also Volkswagen*, 545 F.3d 315. The Court also should not reward Balthaser Online's tactic

of terrorizing tiny, 1 or 2-employee companies and other east Texas businesses with litigation to find some way of associating this California-centric case with Texas.  If Balthaser Online is allowed to skirt § 1404(a)'s requirements by ensnaring local Texas businesses in this litigation, all Texas businesses can expect to become ongoing and regular targets of costly and burdensome patent actions.

4.    The Consideration of All Other Practical Problems is Neutral.

Under the fourth private interest factor, the Court should consider all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *Volkswagen,* 545 F.3d at 315.  This factor currently appears to be neutral.

**C.    Public Interest Factors Also Favor Transfer to the Northern District of California In the Interest of Justice.**

The balance of the public interest factors also favors transfer.  The public interest factors are:  (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.  *Volkswagen,* 545 F.3d at 315.  Each factor either favors transfer or is neutral.

1.    Administrative Concerns Are Neutral.

The first public interest factor, administrative difficulties created by court congestion, is neutral.  There appears to be no clear difference in the average time to disposition of cases in the Eastern District of Texas versus the Northern District of California.  Litigants in the Eastern District of Texas may wait more or less time for disposition depending on whether their case is resolved before or after trial.  Morey Dec. Ex. F.  Also, the available federal judicial statistics do not specify time to disposition for patent cases, which have special rules and procedures in both

districts.  *See e.g., Odom*, No. 08-331 at 10.

> 2.    The Northern District of California Has an Interest in Deciding Claims Between its Residents.

The second public interest factor, the public interest in having localized interests decided at home, weighs heavily in favor of transfer because there is no relevant connection between the actions giving rise to the case and the Eastern District of Texas.  Where a forum's only localized interest in the action is that the product at issue is generally available there, this factor supports transfer to a venue with a more genuine stake in the controversy.  *Volkswagen,* 545 F.3d at 317-318 (finding that the general availability of a product to consumers in the Marshall Division did not create a localized interest weighing against transfer out of the forum).  Such is the case here.

The Northern District of California is home to the plaintiff and the named inventor, Morey Decl. ¶¶ 2-3, and approximately half of the defendants.  By contrast, only a single party–plaintiff or defendant—resides in the Eastern District of Texas, and it was obviously added purely for tactical reasons.  Indeed, Balthaser Online's desperate move is essentially a concession that, without the newly named small Texas businesses, there is no relevant connection whatsoever to the Eastern District Texas.  Otherwise, Balthaser Online would not have scrambled to sweep these unrelated Texas defendants into its amalgamated action.

Balthaser Online cannot attempt to find a relevant connection between this action and the Eastern District in the fact that the defendants' accused web sites are accessible via the Internet in the Eastern District—just as they are in every judicial district.  The Fifth and Federal Circuits have both unequivocally rejected weighing this factor against transfer simply because an accused product that is available nationwide is also available in the Eastern District of Texas.  *See TS Tech*, 2008 U.S. App. LEXIS 26409 at *12 (citing *Volkswagen*, 545 F.3d at 318) ("The citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than

any other venue."); *see also Odom*, No. 08-331 at 11 (noting that while no specific venue has a dominant interest in resolving infringement by nationally available product, this factor favors transfer to forum with identifiable ties to the parties, witnesses, and events leading up to the infringement suit).  By contrast, it is difficult to imagine any other venue where the local interest in this dispute could even approach that of the Northern District of California.

3.    The Northern District of California is Familiar with Patent Cases.

The third public interest factor is neutral.  Both courts would be fully capable of applying the patent laws of the United States, and each has an active patent docket.  Indeed, the Eastern District of Texas modeled its local patent rules on those promulgated in the Northern District of California.

4.    Transfer Will Not Present Any "Conflict of Laws" Issues.

The fourth and final public interest factor is whether a transfer might lead to problems arising from conflicts of law.  This factor is also neutral.  It is unlikely that any conflict of law difficulties will arise in the case given the statutory nature of patent litigation, and because the Federal Circuit would review any substantive issues arising in the case, regardless of which district court hears the case.  *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 667 (E.D. Tex. 2007).  Accordingly, both courts are equally capable of applying the federal patent laws to infringement claims.  *See TS Tech*, 2008 U.S. App. LEXIS 26409 at *7.

**CONCLUSION**

For the foregoing reasons, Balthaser Online's infringement action should be transferred to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

Dated: February 3, 2009

Respectfully submitted,

  /s/ Michael J. Sacksteder
Darryl M. Woo, Bar No. 100513
Michael J. Sacksteder, Bar No. 191605
Candace J. Morey, Bar No. 233081
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Phone: (415) 875-2300
Fax: (415) 281-1350
dwoo@fenwick.com
msacksteder@fenwick.com
cmorey@fenwick.com

ATTORNEYS FOR DEFENDANTS
FRIENDFINDER CALIFORNIA, INC.,
VARIOUS, INC. GLOBAL ALPHABET,
INC., AND CAPCOM, USA

  /s/ Timothy S. Teter
Timothy S. Teter (CA 171451)
Iain R. Cunningham (CA 232357)
COOLEY GODWARD KRONISH LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Phone: (650) 843-5000
Fax:    (650) 857-0663
tteter@cooley.com
icunningham@cooley.com

ATTORNEYS FOR DEFENDANT HI5
NETWORKS, INC.

  /s/ Ira P. Rothken
Ira P. Rothken, Bar No. 160029*
ROTHKEN LAW FIRM
3 Hamilton Landing, Suite 280
Novato, CA 94949
415/924-4250
Fax: 14159242905
Email: ira@techfirm.net

(*admitted pro hac vice)

ATTORNEYS FOR DEFENDANTS
FRIENDFINDER CALIFORNIA, INC.,
VARIOUS, INC. AND GLOBAL
ALPHABET, INC.

  /s/ Jerry R. Selinger _____

Jerry R. Selinger
PATTERSON & SHERIDAN LLP
1700 Pacific, Suite 2650
Dallas, TX 75201
Email: jselinger@pattersonsheridan.com
Email: tackermann@pattersonsheridan.com

Monique Raub
PATTERSON & SHERIDAN, LLP -
3040 Post Oak Blvd., Suite 1500
Houston, TX 77056


Email: mraub@pattersonsheridan.com


ATTORNEYS FOR DEFENDANTS
FRIENDSTER, INC.

   /s/ Wayne M. Barsky _____

GIBSON, DUNN & CRUTCHER LLP
Wayne M. Barsky, CA Bar No. 116731*
David A. Segal, CA Bar No. 166635
Sarah E. Piepmeier, CA Bar No. 227094*
Alison R. Watkins, CA Bar No. 253023*
555 Mission Street, Suite 3000
San Francisco, CA  94105
Telephone:     (415) 393-8200
Facsimile:     (415) 374-8404
wbarsky@gibsondunn.com
dsegal@gibsondunn.com
spiepmeier@gibsondunn.com
awatkins@gibsondunn.com

(*admitted pro hac vice)

ATTORNEYS FOR DEFENDANTS
CYWORLD INC., ELECTRONIC ARTS
INC., GAIA INTERACTIVE INC., IMEEM,
INC., LIVE JOURNAL INC., AND NING,
INC.


## CONSENT TO FILE ON BEHALF OF LEAD ATTORNEYS

I, Michael J. Sacksteder, attest that concurrence in the filing of this document and the supporting declarations related to California Defendants' Joint Motion To Transfer Venue Under 28 U.S.C. § 1404(a) has been obtained from counsel for the above co-signing Defendants.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 3rd day of February, 2009 in San Francisco, California.

                                        /s/ Michael J. Sacksteder _____
                                        Michael J. Sacksteder

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who have consented to electronic service, Local Rule CV-5(a)(3)(A), on this the 3rd day of February.

Dated: February 3, 2009                          Respectfully submitted,


  /s/ Michael J. Sacksteder
_____

Michael J. Sacksteder, Bar No. 191605
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104

ATTORNEYS FOR DEFENDANTS


## <u>CERTIFICATE OF CONFERENCE</u>

Counsel has complied with the meet and confer requirement in Local Rule CV-7(h) and the present motion is opposed.  Counsel for plaintiff would not agree to transfer of this action to the Northern District of California.  Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

The personal conference required by this rule was conducted on February 3, 2009 at 2:00 pm PST/5:00 pm EST via telephonic conference call.  The following persons participated in the telephonic meeting for Balthaser Online:  Fred Fabricant, Cynthia Yang, Brian DeMatteo, Sam Baxter, and Rosemary T. Snider.  The following persons participated in the telephonic meeting on behalf of defendants:  Michael Sacksteder, David Segal, Richard Meyer, and Candace Morey.  Counsel for the remaining moving defendants and the remaining original defendants

previously consented to representation at the meet and confer by the listed counsel for
defendants.

Dated: February 3, 2009                    Respectfully submitted,


                                             /s/ Michael J. Sacksteder
                                           _____
                                           Darryl M. Woo, Bar No. 100513
                                           Michael J. Sacksteder, Bar No. 191605
                                           Candace J. Morey, Bar No. 233081
                                           FENWICK & WEST LLP
                                           555 California Street, 12th Floor
                                           San Francisco, CA 94104
                                           ATTORNEYS FOR DEFENDANTS