**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

BALTHASER ONLINE, INC.,

                        Plaintiff,

       v.

NETWORK SOLUTIONS, LLC, THE KNOT, INC., INSIDER GUIDES, INC., CYWORLD INC., FRIENDFINDER NETWORKS, INC., HI5 NETWORKS, INC., FREEWEBS, INC., GAIA INTERACTIVE INC., FRIENDSTER, INC., EBAUM'S WORLD, INC., PUMA INTERNATIONAL, INC., IMEEM, INC., SCRIPPS NETWORKS, LLC, LIVE JOURNAL INC., NIKE, INC., NING, INC., SWATCHBOX TECHNOLOGIES, INC., ELECTRONIC ARTS INC., HOOKUMU INC., MEREDITH CORP., and CAPCOM USA, INC.,

                        Defendants.

Civil Action No. 2:08-cv-430-DF

**(JURY TRIAL DEMANDED)**

**PLAINTIFF BALTHASER ONLINE'S OPPOSITION TO THE
CALIFORNIA DEFENDANTS' JOINT MOTION
TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)**

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................1

II.     ARGUMENT ......................................................................................................5

        A.      Applicable Law.................................................................................5

        B.      The Private Interest Factors Weigh Heavily Against Transfer...............................6

                1.      The Sources Of Proof Factor Weighs Against Transfer .............................6

                2.      The Availability Of Compulsory Process Factor Does Not Favor Transfer9

                3.      The Cost Of Attendance Of Witnesses Factor Weighs Against Transfer..12

                4.      Other Private Factors Weigh Against Transfer.........................................15

        C.      The Public Interest Factors Weigh Heavily Against Transfer...............................16

                1.      The Administrative Concerns Factor Weighs Strongly Against Transfer.16

                2.      The Local Interest Factor Does Not Favor Transfer.................................18

                3.      The Remaining Public Interest Factors Are Neutral.................................21

III.    CONCLUSION...................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Brenda Woods v. General Motors Corp.*,
    No. 2:08-CV-122, 2009 U.S. Dist. LEXIS 3192 (E.D. Tex. Jan. 16, 2009)............................6

*I Santi, Inc. v. Great American Insurance Co. of New York*,
    No. 08-895, 2008 U.S. Dist. LEXIS 91941 (E.D. La. Oct. 31, 2008) ......................................9

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008).........................................................................5, 8, 13, 18

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ........................................................................ passim

*Invitrogen Corp. v. General Electric Co.*,
    No. 6:08-CV-112, 2009 U.S. Dist. LEXIS 9127 (E.D. Tex. Feb. 9, 2009).............................18

*Invitrogen Corp. v. General Electric Co.*,
    No. 6:08-CV-113, 2009 U.S. Dist. LEXIS 9113 (E.D. Tex. Feb. 9, 2009)........................8, 16

*MHL Tek, LLC v. Nissan Motor Co.*,
    No. 2:07-CV-289, 2009 U.S. Dist. LEXIS 1376 (E.D. Tex. Feb. 23, 2009) ...........................2

*Mohamed v. Mazda Motor Corp.*,
    90 F. Supp. 2d 757 (E.D. Tex. Mar. 27, 2000) ......................................................16

*Monster Cable Prods., Inc. v. Trippe Mfg. Co.*,
    No. 9:07-CV-286, 2008 U.S. Dist. LEXIS 47198 (E.D. Tex. June 18, 2008).......................16

*Nike, Inc., v. Addidas America Inc. et al.*,
    No. 9:06-CV-43, Dkt. No. 1 (E.D. Tex May 24, 2006).......................................................4, 5

*Novartis Vaccines and Diagnostics, Inc. v. Hoffman-La Roche Inc.*,
    No. 2:07-CV-507, 2009 U.S. Dist. LEXIS 14656 (E.D. Tex. Feb. 3, 2009) .............6, 9, 13, 18

*Odom v. Microsoft Corp.*,
    No. 6:08-CV-331, 2009 U.S. Dist. LEXIS 9835 (E.D. Tex. Jan. 30, 2009)...........................18

*Pulido v. General Motors Corp.*,
    No. 2:08-CV-245, 2008 U.S. Dist. LEXIS 99964 (E.D. Tex. Dec. 1, 2008)...........................13

*Repligen Corp. v. Bristol-Myers Squibb Co.*,
    No. 2:06-CV-4, 2006 U.S. Dist. LEXIS 50384 (E.D. Tex. July 20, 2006) ............................16

*Rooster Prods. Int'l, Inc. v. Custom Leathercraft Mfg. Co.*,
   No. SA:04-CA-864, 2005 U.S. Dist. LEXIS 1643 (E.D. Tex. Feb. 1, 2005)..........................16

*Williams v. Toyota Motor Corp.*,
   No. 2:07-CV-442, 2008 U.S. Dist. LEXIS 99367 (E.D. Tex. Dec. 9, 2008)................9, 12, 13

## STATUTES

28 U.S.C. § 1404.....................................................................................................................1

## OTHER AUTHORITIES

Fed. R. Civ. P. 45.................................................................................................................10

I.          **INTRODUCTION**

Plaintiff Balthaser Online, Inc. ("Balthaser" or "Plaintiff") submits this response in opposition to the California Defendants' Joint Motion to Transfer Venue under 28 U.S.C. § 1404(a).   An Opposition Declaration of Bryan N. DeMatteo (hereinafter, Ex. A (DeMatteo Decl.)) and accompanying Exhibits (Exs. 1-18) are submitted herewith.   Also submitted herewith is a Declaration of the President of Balthaser Online, Neil Balthaser, (hereinafter Ex. B (Balthaser Decl.)) as well as declarations on behalf of Defendants Interaria (Decl. of James Shields, hereinafter, Ex. C (Shields Decl.)) and Art Star Design LLC (Decl. of Ryan Bishop, hereinafter Ex. D (Bishop Decl.)), which oppose the Motion to Transfer.  On February 25, 2009, Defendant Big Jump Media, Inc. ("Big Jump Media") also filed with the Court a declaration opposing the Motion to Transfer.  (*See* Decl. of Jason Illian filed with the Court as Dkt. No. 193-2 (hereinafter Dkt. No. 193-2 (Illian Decl.)).

Transfer is not warranted in this case.  This is a decentralized, nationwide patent suit based on infringement by more than 25 websites hosted in numerous states and accessible via the web from any location in the nation.  As shown in the map below, 14 of the 28 Defendants in this case (two more than the 12 moving Defendants) have their principal places of business in Texas and eight other eastern States (including Iowa, Tennessee, Virginia, Maryland, Pennsylvania, New Hampshire, New York, and Massachusetts) – all of which are more than a thousand miles closer to the Eastern District of Texas than to California.[1]

_____

[1]  The black circular points on the map mark Defendants' principal places of business.  The principal places of business of the 12 moving Defendants are located within approximately 30 miles of each other in San Mateo, Palo Alto, Redwood City, San Jose, and San Francisco, California.  Dkt. No. 168 at 6-12.



Sources of proof and witnesses of these Defendants are spread across the United States, as well as in the United Kingdom, Spain, Italy, the Netherlands, Argentina and India.  Defendants' focus on only *California* Defendants, the convenience of only *California* witnesses, the location of only *California* sources of proof, and the local interests of only *California* venues creates the false impression that this case is California-centric and fails completely to establish that transfer is "clearly more convenient" for *all* parties, as required by the law.  *See, e.g., MHL Tek, LLC v. Nissan Motor Co.*, No. 2:07-CV-289, 2009 U.S. Dist. LEXIS 1376, at *15 (E.D. Tex. Feb. 23, 2009) (denying transfer where parties, witnesses and proof were not localized, but rather were spread throughout the nation in different states).

       When the convenience of all parties – not just those in California – are considered, it is clear that both private and public factors weigh against transfer.  A transfer to

2

California would fail to place this case in a venue with absolute subpoena power over all witnesses, many of whom are spread across the nation and throughout the world. It would also increase distances to 14 Defendants by an average of 1275 miles, thereby hampering access to half the sources of proof in this case, as well as increasing substantially the cost for witnesses at these locations to attend depositions and trial. Witnesses would also likely spend more on food, transportation and lodging in the Northern District of California, which is more expensive than this District by over *two-fold*. Ex. 1. Even administrative concerns, such as court congestion, weigh strongly against transfer to the Northern District of California, where patent cases take more than a year longer to get to trial than in this District. Ex. 14 at 12, Chart 7D. A transfer to California, which would add substantial inconvenience and cost to more than half the parties and witnesses in this case, is clearly not more convenient for all parties.

Perhaps the best evidence that transfer would not serve the convenience of all parties is the fact that *all* Texas Defendants who have appeared in this action (Interaria, Art Star Design LLC, and Big Jump Media, Inc.) oppose the Motion to Transfer.[2] The California Defendants seek to drag these Texas Defendants to California based on an unsupported accusation that they were added by Plaintiff for purposes of venue. Dkt. No. 168 at 2. Balthaser is a small 2-employee company that provides website design services via the Internet. Ex. B (Balthaser Decl.) at ¶ 3. Interaria and Art Star Design provide similar services, and Big Jump

_____

[2] Defendants Interaria, Art Star Design and Big Jump Media have joined in Plaintiff's opposition and have submitted Declarations opposing the Motion to Transfer. *See* Ex. C (Shields Decl.), Ex. D (Bishop Decl.) and Dkt. No. 193-2 (Illian Decl.). *Pro se* Defendants Interaria and Art Star Design indicated previously that they would not oppose based on the mistaken belief, after speaking with counsel for a California Defendant, that Plaintiff would dismiss them from the case if it were transferred and that a settlement would be less likely if the case remained in Texas. Ex. C (Shields Decl.) at ¶ 7; Ex. D (Bishop Decl.) at ¶ 7. The President of Interaria – James Shields – also got the mistaken impression from the conversation with counsel for the California Defendant that Balthaser "would be *unable* to release or settle with [Interaria]" if the case remained in Texas. Ex. 2 (emphasis added). The fourth Texas Defendant – www.shameblame.com – has not appeared in this action.

Media provides other services, all of which directly infringe U.S. Patent No. 7,000,180 ("the patent-in-suit"). *Id.* at ¶ 5.  To protect Balthaser's patent rights, these Texas companies, as well California Defendant Booker Entities and shameblame.com, were added in an Amended Complaint filed on January 15, 2009, without opposition from Defendants and more than two weeks before Defendants filed their Motion to Transfer on February 3.  Dkt. Nos. 123, 124, 168; Ex. B (Balthaser Decl.) ¶ 5.  Balthaser should not be punished for exercising its right to seek redress for patent infringement.  There is simply no legal basis for ignoring any of the Defendants in the venue analysis, especially the Texas Defendants, which expressly oppose the Motion to Transfer.

Transfer is even less warranted, in view of the substantial connection that Texas – and particularly this District – has to the parties and issues in this case.  All Defendants commit acts of infringement in this District by allowing users here to access their websites.[3]  Four Defendants have their principal places of business and all relevant documents in this District and other parts of Texas. Ex. C (Shields Decl.) at ¶¶ 2, 14; Ex. D (Bishop Decl.) at ¶¶ 2, 14; Dkt No. 193-2 at ¶ 3.  Two California Defendants admitted in a prior suit that they "[do] and continue to do business in the Eastern District of Texas" regarding their infringing websites, despite contending in their Motion that "***not one of the California defendants has any potentially relevant connection anywhere in the state of Texas.***"  Dkt. No. 168 at 5 (emphasis in original); Ex. 3 at ¶ 4; Ex. 4 at ¶ 4.  Defendant Nike, Inc. ("Nike") availed itself directly of the benefits of this District when it sued Adidas Corp. ("Adidas") for patent infringement in the Eastern District of Texas in 2006.  *Nike, Inc., v. Addidas America Inc. et al.*, No. 9:06-CV-43, Dkt. No. 1 (E.D.

---

[3] Numerous claims of the patent-in-suit, *e.g.*, claim 44, require only that a website owner "allow" users to perform certain tasks, not that the users must actually perform these tasks to infringe. Ex. 17 at col. 64, lns. 18-46.  Therefore, by allowing access to infringing websites in the Eastern District of Texas, all Defendants directly infringe the patents-in-suit in this District.

Tex May 24, 2006). Although Nike and Adidas are Oregon corporations with headquarters in that state less than 15 miles apart, Nike opposed (successfully) Adidas's motion to transfer the case to Oregon, arguing that this District is a more convenient venue. *Id.* at Dkt. Nos. 27 and 16 (attached hereto as Exs. 5, 6). Four other Defendants employ Texas salespersons, analysts and other employees, the testimony of whom may be relevant to damages (Dkt. No. 168-4 at ¶ 9; Dkt. No. 171-6 (Olsen Decl.) at ¶ 9; Dkt. No. 171-7 (Fore Decl.) at ¶ 6; Dkt. No. 168-5 at ¶ 7); another four host and/or maintain infringing websites from servers located in Austin, Houston, and Irving, Texas (Exs. 7-9; Dkt. No. 171-5 (Cook Decl.) at ¶ 7); and three other Defendants advertise their companies' services and were exhibitors at trade shows in Texas (Exs. 10-12). It is clear that Texas, which is centrally located and at least as convenient as California, has a substantial connection to this case. Defendants' Motion should be denied.

## II.        ARGUMENT

### A.        Applicable Law

A party seeking to transfer venue must show good cause for the transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen*"); *See also In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) ("*TS Tech*"). The Fifth Circuit has defined good cause to mean that the movant, in order to prevail on a motion to transfer venue, "must satisfy the statutory requirements and *clearly* demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Volkswagen*, 545 F.3d at 315 (emphasis added). Although the Plaintiff's choice of forum is not an independent factor in the analysis, it is nonetheless taken into account "as it places a significant burden on the movant to show good cause for the transfer." *Id*. at 315, n.10. "Thus, when the transferee venue is not

clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315.

To determine whether transfer is warranted, courts generally consider various private and public factors. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make the trial of a case easy, expeditious, and inexpensive." *Id.* (citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)) (further citations omitted). The public factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

### B.    The Private Interest Factors Weigh Heavily Against Transfer

The private interest factors weigh strongly against transfer of this case. Defendants' Motion to Transfer should be denied.

#### 1.    The Sources Of Proof Factor Weighs Against Transfer

The relative ease of access to proof ("the sources of proof factor") weighs strongly against transfer. When considering this factor, courts compare distances between venues and sources of proof, as well as the relative ease in transporting proof to such venues. *See, e.g., Novartis Vaccines and Diagnostics, Inc. v. Hoffman-La Roche Inc.* No. 2:07-CV-507, 2009 U.S. Dist. LEXIS 14656, at *4-6 (E.D. Tex. Feb. 3, 2009) (order denying motion to transfer); s*ee also Brenda Woods v. General Motors Corp.*, No. 2:08-CV-122, 2009 U.S. Dist. LEXIS 3192, at *14-15 (E.D. Tex. Jan. 16, 2009). The sources of proof in this case are many

and are spread across the nation and throughout the world.  Fourteen of the 28 Defendants in this

case have principal places of business in Texas and in eastern states, including Iowa, Tennessee,

Virginia, Maryland, Pennsylvania, New Hampshire, New York, and Massachusetts.  Defendants

have failed to demonstrate how a transfer would ease access to proof at these locations.  Nor

could they credibly do so, as a transfer to the Northern District of California – as shown in the

table below – would increase the distance to these 14 non-California Defendants by an average

of 1275 miles:[4]

| Defendant (Principal Place of Business) | Distance to Eastern District of Texas (Marshall) | Distance to Northern District of California (San Francisco) | Increase in distance if case is transferred |
|---|---|---|---|
| Network Solutions, LLC (Herndon, Virginia) | 1049.8 Miles | 2421.4 Miles | 1371.6 Miles 130% Increase |
| The Knot, Inc. (New York, New York) | 1259.9 Miles | 2571.9 Miles | 1312 Miles 104% Increase |
| Insider Guides, Inc. (New Hope, Pennsylvania) | 1204.8 Miles | 2528.1 Miles | 1323.3 Miles 109% Increase |
| Freewebs, Inc. (Silver Spring, Maryland) | 1068.6 Miles | 2440.0 Miles | 1371.4 Miles 128% Increase |
| Ebaum's World, Inc. (Rochester, New York) | 1168.6 Miles | 2361.5 Miles | 1192.9 Miles 102% Increase |
| Puma North America, Inc. (Westford, Mass.) | 1429.8 Miles | 2677.6 Miles | 1247.8 Miles 87% Increase |
| Scripps Networks, LLC (Knoxville, Tennessee) | 642.1 Miles | 2121.6 Miles | 1479.5 Miles 230% Increase |
| Swatchbox Technologies (Northborough, Mass.) | 1413.6 Miles | 2670.7 Miles | 1257.1 Miles 88% Increase |
| Hookumu, Inc. (Londonderry, NH) | 1440.1 Miles | 2677.2 Miles | 1237.1 Miles 86% Increase |
| Meredith Corporation (Des Moines, IA) | 625.9 Miles | 1550.7 Miles | 924.8 Miles 148% Increase |
| Art Star Design, LLC (Austin, Texas) | 253.8 Miles | 1502.3 Miles | 1248.5 Miles 492% Increase |
| Intreraria (Denton, Texas) | 167.3 Miles | 1455.1 Miles | 1287.8 Miles 770% Increase |
| Big Jump Media (Plano, Texas) | 139.6 Miles | 1483.4 Miles | 1343.8 Miles 963% Increase |
| Shameblame.com (Austin, Texas) | 253.8 Miles | 1502.3 Miles | 1248.5 Miles 492% Increase |
| | | | |
| | | Average Increase If Transferred | 1275 Miles |

[4] Distances are based on linear air miles and were determined using a distance calculator at http://www.infoplease.com/atlas/calculate-distance.html.

A large portion of Plaintiff's documents are also located at its co-counsel's offices in Marshall, Texas (McKool Smith, P.C.). Ex. B (Balthaser Decl.) at ¶ 4. The relative ease of access to proof from Texas, as compared to California, weighs against transfer of this case.

Defendants contend that transfer is nonetheless warranted because "the moving defendants' documentary and physical evidence is located in the Northern District of California." Dkt. No. 168 at 17-19. The question is whether access to *all* sources of proof – not just the moving Defendants' proof – would be eased by transfer. *Invitrogen Corp. v. General Electric Co.*, No. 6:08-CV-113, 2009 U.S. Dist. LEXIS 9113, at *6-7 (E.D. Tex. Feb. 9, 2009) (denying transfer, in part because, the transferee venue "would be a more convenient venue for some sources of proof, but less convenient for others."). As described above, access to proof of 14 Defendants in nine eastern states would be substantially hindered if this case is transferred to California. Marshall, Texas is by far a more convenient and centrally located venue when considering *all* sources of proof (not just California sources).

Defendants' reliance on *Volkswagen* and *TS Tech* is also misplaced. Dkt. No. 168 at 18. In both of those cases, all relevant evidence was confined to a localized geographical region. In *Volkswagen*, all evidence (*e.g.*, the location of the accident, residences of witnesses, the police and paramedics responding to the accident, a doctor performing an autopsy, etc.) was located in a single venue – the Northern District of Texas. *Volkswagen*, 545 F.3d at 316. In *TS Tech*, "the vast majority of documentary evidence" was located regionally in the Midwest in and around Ohio, Michigan, and Ontario. *TS Tech*, 551 F.3d at 1321. Here, relevant evidence is spread nationwide across 11 states, the majority of which are on the east coast. At present, the furthest that any piece of evidence has to travel to reach the Eastern District of Texas is

approximately 1750 miles.[5]  If this case were transferred to California, some evidence would be located more than 2600 miles away in Westford, Massachusetts – Defendant Puma's principal place of business.  Proof is far more easily accessible from Marshall, Texas than from the Northern District of California.  The sources of proof factor weighs against transfer of this case.

2.     The Availability Of Compulsory Process Factor Does Not Favor Transfer

The availability of compulsory process ("the compulsory process factor") does not favor transfer.   A venue that enjoys "*absolute* subpoena power for both depositions and trial" is favored over one that does not.  *Volkswagen*, 545 F.3d at 316 (emphasis in original).  However, where no one venue has absolute subpoena power over all witnesses, the compulsory process factor is neutral and does not favor transfer.  According to this Court:

> A transfer from one district without absolute subpoena power to another without absolute subpoena power is not clearly more convenient – such a transfer will merely reallocate inconvenience to the transferee district.  In such a situation, [the compulsory process] factor . . . does not weigh in favor of transfer.

*Novartis Vaccines and Diagnostics*, 2009 U.S. Dist. LEXIS 14656, at *8 (order denying motion to transfer); *see also Williams v. Toyota Motor Corp*., No. 2:07-CV-442, 2008 U.S. Dist. LEXIS 99367, *16 (E.D. Tex. Dec. 9, 2008) (finding the compulsory process factor neutral where the defendants could not identify "a proper venue that enjoys 'absolute subpoena power for both depositions and trial' over all of the witnesses . . . .").  Transfer is particularly disfavored where – as here – the current venue has subpoena power over at least some witnesses.  *I Santi, Inc. v. Great American Insurance Co. of New York*, No. 08-895, 2008 U.S. Dist. LEXIS 91941, *6-7

---

[5] The linear distance from Beaverton, Oregon (Nike, Inc.'s principal place of business and furthest Defendant to Marshall, Texas) is 1757.8 miles. http://www.infoplease.com/atlas/calculate-distance.html.

(E.D. La. Oct. 31, 2008).[6]  A venue does not have subpoena power over a third party or an employee of a corporate party who resides more than 100 miles from the venue, unless the employee is also an officer of the party.  *See* Fed. R. Civ. P. 45(c)(3)(A)(ii) ("On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides . . . .").

        The compulsory process factor does not favor transfer because the Northern District of California does not enjoy subpoena power over numerous non-officer and non-party witnesses that are spread nationwide across 17 states, as well as throughout the world.  Indeed, the very non-California Defendants who joined in the Motion to Transfer have identified witnesses in Oregon, Iowa, Tennessee, Virginia, Maryland, Missouri, Pennsylvania, New York, New Jersey, and Massachusetts, as well as in the United Kingdom, Spain, Italy, the Netherlands, Argentina and India.  Dkt. No. 171-8 (Davis Decl.) at ¶5; Dkt. No. 171-7 (Fore Decl.) at ¶¶ 2, 5; Dkt. No. 171-11 (Lechtzin Decl.) at ¶ 3; Dkt. No. 171-5 (Cook Decl.) at ¶¶ 3, 6; Dkt. No. 171-3 (Van Pelt Decl.) at ¶¶ 3, 6-8; Dkt. No. 171-2 (Bauman Decl.) at ¶¶ 3, 6, 7; Dkt. No. 171-9 (Arroyo Decl.) at ¶¶ 6-7; Dkt. No. 171-10 (Jenks Decl.) at ¶¶ 3, 6; Dkt. No. 171-4 (Pierce Decl.) at ¶¶ 3, 6-8; Dkt. No. 171-6 (Olson Decl.) at ¶¶ 4, 6; Ex. C (Shields Decl.) at ¶¶ 2, 14; Ex. D (Bishop Decl.) at ¶¶ 2, 14.  Even the California Defendants have identified key employees and third party witnesses outside the subpoena power of California in Mesquite, Dallas and Austin, Texas (Dkt. No. 168-4 (Svensson Decl.) at ¶ 9; Dkt. No. 168-5 (Schatz Decl.) at  ¶7); Georgia

_____

[6] Defendant Big Jump Media's principal place of business is in Plano, Texas within this District. Dkt. No. 193-2 (Illian Decl.) at ¶ 3.  The Court has subpoena power over employees of this company, who likely reside in and around Plano within 100 miles of this District.  It is also likely that this District has subpoena power over at least some employees of Defendant Booker Entities, which has a mailing address in this District. Ex. 13.

(Dkt. No. 168-12 (Ghoorah Decl.) at ¶ 9; Dkt. No. 168-11 (Komarov Decl.) at ¶ 7); Oregon (Dkt. No. 168-8 (Kitagawa Decl.) at ¶ 6; Dkt. No. 171-8 (Davis Decl.) at ¶ 5; Dkt. No. 168-11 (Komarov Decl.) at ¶ 8); Kansas (Dkt. No. 168-12 (Ghoorah Decl.) at ¶ 9); New Jersey (Dkt. No. 168-8 (Kitagawa Decl.) at ¶ 9); Utah (Dkt. No. 168-5 (Schatz Decl.) at ¶7); New York, (Dkt. No. 168-12 (Ghoorah Decl.) at ¶ 9; Dkt No. 168-10 (Growney Decl.) at ¶¶ 6, 10); South Dakota (Dkt. No. 168-11 (Komarov Decl.) at ¶ 7); Vermont (Dkt. No. 168-11 (Komarov Decl.) at ¶ 7); Virginia (Dkt. No. 168-5 (Schatz Decl.) at ¶ 7; Dkt. No. 168-11 (Komarov Decl.) at ¶ 7); Illinois (Dkt. No. 168-11 (Komarov Decl.) at ¶ 7); Canada (Dkt. No. 168-12 (Ghoorah Decl.) at ¶ 9); Australia (Dkt. No. 168-12 (Ghoorah Decl.) at ¶ 9); New Zealand (Dkt. No. 168-12 (Ghoorah Decl.) at ¶ 9); the United Kingdom (Dkt. No. 168-12 (Ghoorah Decl.) at ¶ 9); Brazil (Dkt. No. 168-12 (Ghoorah Decl.) at ¶ 9); Spain (Dkt. No. 168-12 (Ghoorah Decl.) at ¶ 9); and Russia (Dkt. No. 168-11 (Komarov Decl.) at ¶ 9). California cannot compel any of these witnesses to attend trial. The compulsory process factor is, at best, neutral and does not favor transfer.

Defendants contend improperly that this factor weighs in favor of transfer because they have identified a single piece of purported prior art (the "Yahoo Art") in California. Dkt. No. 168 at 19. Defendants offer nothing more than conjecture regarding the location of relevant documents and witnesses relating to this art. Defendants have not even confirmed whether they will assert the art at all, saying only that they "may" assert it, that the art "may" invalidate the patent-in-suit and that the Northern District of California is "likely" (but not certain) to be the location of relevant documents and witnesses. Dkt. No. 168 at 14-15. Defendants have also offered nothing to suggest that these unidentified witnesses, who may not even be subject to California's subpoena power, would be unwilling to attend depositions and/or trial in Texas, nor have Defendants explained why testimony of these witnesses is necessary at all, considering that

the purported Yahoo Art is freely accessible via the Internet.  Dkt. No. 168 at 15.  Even if the testimony of these unidentified witnesses is necessary, Defendants have not shown why videotaped depositions of these witnesses – taken pursuant to a subpoena issued from a California Court – would not suffice at trial.  *See Williams*, 2008 U.S. Dist LEXIS 99367, at *16 (finding the compulsory process factor neutral where "neither party is prevented from using the witness's videotaped deposition at trial.").  Such conjecture and lack of proof falls far short of what is required to establish that transfer is "clearly more convenient."

Even assuming, *arguendo*, that the unidentified witnesses exist and would be unwilling to testify in Texas, the compulsory factor would still not favor transfer.  The Northern District of California simply does not enjoy absolute subpoena power over all witnesses in this case, given the fact that Defendants reside in 11 states.  Unlike *Volkswagen*, where a transfer of venue brought all witnesses within the subpoena power of a single venue, a transfer here would merely reallocate conveniences among two venues, both of which have subpoena power over some but not all witnesses.  *Volkswagen*, 545 F.3d at 316-17.  The compulsory process factor is, therefore, neutral and does not favor transfer.

3.     The Cost Of Attendance Of Witnesses Factor Weighs Against Transfer

The cost of attendance of witnesses ("the cost of attendance factor") weighs strongly against transfer.  In deciding this factor, Courts generally consider distances witnesses must travel to reach respective venues.  *Id.* at 317 ("[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.").  Where all witnesses are located in or close to a single venue, convenience of witnesses may warrant transfer.  *Id.* at 315-316 (granting transfer where

all witnesses and physical evidence were located in the transferee venue); *TS Tech*, 551 F.3d at

1320 (granting transfer where all identified witnesses lived in or around the transferee venue).

However, transfer is not warranted where witnesses are decentralized and transfer would merely

enhance the convenience of some witnesses, while inconveniencing others.  *See Novartis*

*Vaccines and Diagnostics*, 2009 U.S. Dist. LEXIS 14656, at *10 (denying transfer were

"witnesses [were] decentralized" and where "transferee venue [was] not more convenient for

many involved"); *see also Pulido v. General Motors Corp.*, No. 2:08-CV-245, 2008 U.S. Dist.

LEXIS 99964, *11-12 (E.D. Tex. Dec. 1, 2008) (finding the convenience of witnesses factor

neutral where witnesses were decentralized and transfer would not be convenient for all parties);

*Williams*, 2008 U.S. Dist. LEXIS 99367 at *9 (denying transfer where both venues "would be

just as convenient or inconvenient to the defendants").

   Contrary to Defendants' assertion, this case is *not* regional to California.  It is a

decentralized, nationwide patent infringement suit.  Half of the Defendants in this case (14

Defendants) have their principal places of business, as well as identified relevant witnesses, in

Texas and eight other eastern states, as well as in the United Kingdom, Spain, Italy, the

Netherlands, Argentina and India – all of which are more than a thousand miles from California

and far closer to the Eastern District of Texas. Dkt. No. 171-7 (Fore Decl.) at ¶¶ 2, 5; Dkt. No.

171-11 (Lechtzin Decl.) at ¶ 3; Dkt. No. 171-5 (Cook Decl.) at ¶¶ 3, 6; Dkt. No. 171-3 (Van Pelt

Decl.) at ¶¶ 3, 6-8; Dkt. No. 171-2 (Bauman Decl.) at ¶¶ 3, 6, 7; Dkt. No. 171-9 (Arroyo Decl.)

at ¶¶ 6-7; Dkt. No. 171-10 (Jenks Decl.) at ¶¶ 3, 6; Dkt. No. 171-4 (Pierce Decl.) at ¶¶ 3, 6-8;

Dkt. No. 171-6 (Olson Decl.) at ¶¶ 4, 6; Ex. C (Shields Decl.) at ¶¶ 2, 14; Ex. D (Bishop Decl.)

at ¶¶ 2, 14. Defendants have failed completely to demonstrate how a transfer to California would

serve the convenience of witnesses at these locations, which are – on average – more than 1275

miles closer to the Eastern District of Texas than to the Northern District of California.  A transfer to California would merely enhance the convenience of California witnesses, while substantially inconveniencing the witnesses of half the parties in this suit.[7]  The cost of attendance factor, thus, weighs against transfer.

Defendants also ignore the relative cost of goods and services that witnesses would be required to purchase in the Northern District of California as compared with Marshall, Texas.  In every consumable category, the Northern District of California is, on average, *more than twice as expensive* as Marshall, Texas.  Ex. 1.[8]  If this case were transferred, witnesses could expect to spend considerably more money on lodging, transportation, and food.  This would, in turn, increase the cost of attendance and reduce convenience of both party and non-party witnesses.  This further weighs against transfer.

Defendants sidestep these glaring deficiencies by suggesting – without any legal support – that the convenience of only California witnesses should be considered.  Dkt. No. 168 at 19-23.  Defendants' position is plainly contrary to law, which requires consideration of *all* witnesses, not just those located in the moving parties' jurisdiction.  *See, e.g., Volkswagen*, 545 F.3d at 317 (considering the conveniences of all likely witnesses, not just those in the transferee venue).

---

[7] Given the substantial increase in distance and cost that would result from a transfer, the non-California Defendants' self-serving and unsupported assertion that California is a more convenient forum is simply not credible.  Dkt. No. 171.

[8] According to http://www.bestplaces.net, San Francisco is 169% (approximately 2 ½ times) more expensive than Marshall, Texas.  Ex. 1.  Other jurisdictions in the Northern District of California are similarly more expensive.  Oakland, California is 102% more expensive, Eureka, California is 59% more expensive, and San Jose, California is 132% more expensive.  *Id*.  The average of these jurisdictions is 115.5%, which is more than twice as expensive than Marshall, Texas.  *Id*.

Also contrary to law is the California Defendants' attempt to ignore the conveniences of Texas witnesses. Dkt. No. 168 at 22-23. Three of the four Texas Defendants – Interaria, Big Jump Media, and Art Star Design – oppose the Motion to Transfer and have testified through affidavit that it would be far more convenient for their companies to litigate this case in Marshall, Texas. Ex. C (Shields Decl.) at ¶¶ 13-17; Ex. D (Bishop Decl.) at ¶¶ 13-17; Dkt. No. 193-2 (Illian Decl.) at ¶¶ 3-4. There is no legal basis to ignore the conveniences of these parties. Regardless, the 10 non-Texas Defendants – whose witnesses are spread across nine eastern States and six countries throughout the world – are all far closer to this District than to California. The moving Defendants cannot credibly contend that a transfer would be "clearly more convenient" for these witnesses, regardless of whether Texas Defendants are considered. The cost of attendance factor weighs against transfer of this case.

### 4.  Other Private Factors Weigh Against Transfer

When deciding whether to transfer a case for venue, courts also consider "other practical problems that make trial of a case easy, expeditious and *inexpensive*." *Volkswagen*, 545 F.3d at 315 (emphasis added). Balthaser is a small 2-employee company with limited financial resources. Ex. B (Balthaser Decl.) at ¶ 3. Balthaser has invested considerable time and money retaining and educating Texas co-counsel (the offices of McKool Smith, P.C.) on the issues of this case. *Id*. If this case were transferred to California, this investment would be lost and new co-counsel in California would need to be located, retained and educated at considerable expense. Most of the Defendants would also likely expend significant amounts of money replacing the eight Texas firms appearing as counsel or co-counsel. This added expense weighs strongly against transfer.

C.     **The Public Interest Factors Weigh Heavily Against Transfer**

The public interest factors also weigh against transfer. Defendants' Motion should be denied.

1.     The Administrative Concerns Factor Weighs Strongly Against Transfer

Administrative concerns clearly weigh against transfer. Average litigation times in the Northern District of California are significantly longer than those in the Eastern District of Texas. Indeed, the very federal statistics cited by Defendants indicate that the median time to trial in the Northern District of California is *seven* months longer than in this District. Dkt. No. 168-19. Defendants also fail to consider that this case, which already has a management conference scheduled for April 8, 2009, will be at least five months old by the time the Court decides this Motion.[9] A transfer to California, which would place the case at the end of the docket, would result in a loss of this time and a realistic delay to trial of more than a year.

Defendants downplay this fact by suggesting incorrectly that pre-trial disposition statistics should be considered. Dkt. No. 168 at 23. In virtually every case in this District in which administrative concerns were considered in detail, only the "time to trial" statistic was discussed.[10] Even if pre-trail statistics (such as settlement rates) should be considered, they

---

[9] Balthaser filed its complaint on November 4, 2008, and the Motion to Transfer was filed on February 3, 2009. Dkt. Nos. 1, 168. Defendants' sur-reply is due March 26, 2009 – approximately five months after the complaint was filed. Dkt. No. 190.

[10] *See, e.g., Invitrogen Corp. v. GE*, No. 6:08-CV-113, 2009 U.S. Dist. LEXIS 9113, *11 (E.D. Tex. Feb. 9, 2009); *Monster Cable Prods., Inc. v. Trippe Mfg. Co.*, No. 9:07-CV-286, 2008 U.S. Dist. LEXIS 47198, *12 (E.D. Tex. June 18, 2008) ("In 2007 the median time from filing of a civil case to trial was 29.7 months in the Northern District of Illinois and 18.0 months in the Eastern District of Texas. . . . Transfer is not likely reduce [sic] delay."); *Repligen Corp. v. Bristol-Myers Squibb Co.*, No. 2:06-CV-4, 2006 U.S. Dist. LEXIS 50384, at *11 (E.D. Tex. July 20, 2006); *Rooster Prods. Int'l, Inc. v. Custom Leathercraft Mfg. Co.*, No. SA:04-CA-864, 2005 U.S. Dist. LEXIS 1643, at *16-17 (E.D. Tex. Feb. 1, 2005); *Mohamed v. Mazda Motor Corp.,* 90 F. Supp. 2d 757, 779 (E.D. Tex. Mar. 27, 2000) (holding that a 6 month delay to trial weighed against transfer).

would have relevance only if *all* 28 Defendants in this action were likely to settle before trial – a possibility that is so remote as to be negligible.   Defendants have offered no evidence that early disposition or settlement of all Defendants is likely and, in fact, have already formed a joint defense group and identified in their Motion purported prior art that they contend invalidates Plaintiff's patent.  Dkt. No. 168 at  19.  Since this case is likely to go to trial with at least one Defendant, only the "time to trial" statistic is relevant.

Defendants also suggest that federal "time to trial" statistics should be ignored because "they do not specify time to disposition in patent cases, which have special rules and procedures in both districts."  Dkt. No. 168 at  23.  This argument is puzzling, considering that statistics on patent cases – which Defendants conveniently fail to discuss in their Motion – weigh even more strongly against transfer.   Price Waterhouse Coopers prepared a 2008 Patent Litigation Study analyzing various statistics, including median times to trial in patent cases.  Ex. 14.  The Study indicates that the Eastern District of Texas is currently ranked 5th in the nation (1.71 years) for fastest time to trial in patent cases, whereas the Northern District of California is ranked 16th at 2.87 years – *more than a year longer than in this District*.  *Id*. at 12, Chart 7D.[11] Add to this the five month loss (described above) if this case were transferred, and the actual time to trial would be more than 18 months longer in California than in this District.  Regardless of whether federal or patent statistics are considered, administrative concerns clearly weigh against transfer.

---

[11] Data for time-to-trial in the Study was obtained for 394 trials in 65 different districts, using the court dockets for each matter. Time-to-trial was calculated from the complaint date to the first day of either the bench or jury trial for each case. Ex. 14 at 10.

2.    <u>The Local Interest Factor Does Not Favor Transfer</u>

The Local Interest factor is neutral and does not favor transfer.  The Federal Circuit made clear that, where a patent case is based on nationwide infringement, one venue "[has] no more or less of a meaningful connection to [the] case than any other venue."  *TS Tech*, 551 F.3d at 1321.    Contrary to Defendants' contention, this rule applies even where the transferee venue has some arguable connection to the case.  *See, e.g., Novartis Vaccines and Diagnostics*, 2009 U.S. Dist. LEXIS 14656, at *10 (finding the local interest factor neutral, despite the fact that witnesses, evidence and other sources of proof existed in the transferee venue).[12]  This case involves nationwide infringement by Defendants of more than 25 websites that are hosted in numerous states and accessible from all locations in the nation.  California has no more of an interest in this case than the Eastern District of Texas or any other venue.  The Local Interest factor is, thus, neutral and does not favor transfer.

Defendants' suggestion that the Local Interest factor favors transfer "[w]here a forum's only localized interest in the action is that the product at issue is generally available there" is a misapplication of the *Volkswagen* case.  Dkt. No. 168 at  24.  *Volkswagen* involved a product liability case stemming from an automobile accident in Dallas.  *Volkswagen*, 545 F.3d at 307-08. The Court held that residents in the Eastern District of Texas had no connection to the events of the accident and that the mere existence of similar automobiles in the Eastern District did not change the local nature of the case.  *Id*. at 317-18.  In sharp contrast, this case involves

---

[12] Defendants' reliance on *Odom v. Microsoft Corp.*, No. 6:08-CV-331, 2009 U.S. Dist. LEXIS 9835, at *19-20 (E.D. Tex. Jan. 30, 2009) is misplaced.  Dkt. No. 168 at  25.  The "identifiable connection" noted by the *Odom* Court related almost exclusively to personal dealings between the plaintiff and defendant (*e.g.*, contracts between the parties in the transferee venue) that predated the filing of the complaint.  Indeed, the same Judge in a subsequent case discussed *Odom* and noted that transfer was granted in that case, in large part, "because of the parties' business history and interaction leading up to the infringement suit."  *Invitrogen Corp. v. GE*, No. 6:08-CV-112, 2009 U.S. Dist. LEXIS 9127, *16-17 (E.D. Tex. Feb. 9, 2009).  Defendants allege no such personal dealings, business history or interaction in this case.

allegations of nationwide (not localized) patent infringement. Unlike in *Volkswagen*, residents of the Eastern District of Texas have a direct connection to this case because accessibility of infringing sites in this District is itself a wrongful and compensable act under the patent laws. The Eastern District of Texas has no less a connection to this case than California.

Even if Defendants' interpretation of the law were correct, which it is not, Texas (and particularly this District) has a substantial local interest in this case. Booker Entities's mailing address and Big Jump Media's principal place of business are squarely within this District. Ex. 13; Dkt. No. 193-2 (Illian Decl.) at ¶ 3. Art Star Design and Shameblame.com are located in Austin, and Interaria has its principal place of business and all relevant documents in Denton, Texas. Ex. C (Shields Decl.) at ¶ 2; Ex. D (Bishop Decl.) at ¶ 2. Despite contending that "***not one of the California defendants has any potentially relevant connection anywhere in the state of Texas***" (Dkt. No. 168 at  5 (emphasis in original)), Defendant FriendFinder California, in response to a complaint for patent infringement filed by Epic Realm Licensing in 2007, admitted in its answer that it:

> does and continues to do business in the Eastern District of Texas by entering into membership contracts with residents within the District regarding the use of its websites as a tool to make connections with other members and to find partners for dating, romance and friendship.

Ex. 3 at ¶ 4.[13] Defendant Various, Inc., which also denies any relevant ties to Texas, admitted in the same suit that it too "has done – and continues to do – business in the Eastern District of Texas" with respect to the allegedly infringing websites. Ex. 4 at ¶ 4. Defendant Nike also has direct connections to this District. Nike, which sued Adidas for patent infringement in the Eastern District of Texas in 2006, opposed (successfully) Adidas's motion to transfer the case to

---

[13] FriendFinder Network, Inc., which answered the complaint filed by Epic Realm Licensing, changed its name to FriendFinder California, Inc. prior to the filing of this action. Ex. 18.

Oregon, despite the fact that both Nike and Adidas are Oregon corporations with headquarters in that state less than 15 miles apart. Exs. 5, 6. Capcom USA employs a sales analyst in Mesquite, TX, as well as a salesperson in Dallas, TX, and Meredith Corporation and Network Solutions both employ salespersons in Dallas. Dkt. No. 168-4 (Svensson Decl.) at ¶ 9; Dkt. No. 171-6 (Olsen Decl.) at ¶ 9; Dkt. No. 171-7 (Fore Decl.) at ¶ 6. Testimony of these individuals will likely be relevant on the issue of damages. Defendants Knot, Insider Guides, Swatchbox Technologies and Freewebs all host and/or maintain infringing websites from servers (which likely include infringing HTML, media and backend files) located in Austin and Houston. Exs. 7-9; Dkt. No. 171-5 (Cook Decl.) at ¶ 7. Defendants Imeem, Ning, and Friendster all advertised their companies' services and were exhibitors at trade shows in Texas. Exs. 10-12. Defendant Electronic Arts not only has offices in Austin and Dallas with numerous employees, the testimony of many of whom may be relevant to this case, it recently hosted the 2008 EA Sports NBA Live Challenge in Dallas, TX. Exs. 15, 16; Dkt. No. 168-5 (Schatz Decl.) at ¶ 7. The challenge included an online component that allowed participants (including those in the Eastern District of Texas) to compete with one another via the Web. Ex. 16. It is clear that Texas, and particularly this District, has a substantial connection to this case.

This case involves nationwide infringement by Defendants with principal places of business in 11 separate states. No one venue has more or less of a connection to this case than any other venue. The Local Interest factor is, therefore, neutral and does not weigh in favor transfer.

3.    The Remaining Public Interest Factors Are Neutral

The remaining public interest factors include (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws. *Volkswagen*, 545 F.3d at 315. These factors are neutral. The Northern District of California and the Eastern District of Texas are both capable of interpreting and applying the patent laws, and both Districts have extensive experience handling patent litigation. It is also unlikely that any conflict of law issues will be a concern, considering that the patent statutes are based in federal law.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter a judgment denying the California Defendants' Joint Motion To Transfer Venue Under 28 U.S.C. § 1404(a).

Dated:  March 4, 2009

Respectfully submitted,

**McKOOL SMITH, P.C.**

*/s/ Sam Baxter*
Samuel F. Baxter
Lead Attorney
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Gary Kitchen
Texas Bar No. 24033656
gkitchen@mckoolsmith.com
104 E. Houston St., Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

John F. Garvish, II
Texas State Bar No. 24043681
jgarvish@mckoolsmith.com
300 W. 6th St. Suite 1700
Austin, Texas  78701
Telephone:     (512) 692-8700
Facsimile:     (512) 692-8744

          - and-

Alfred R. Fabricant
fabricanta@dicksteinshapiro.com
Lawrence C. Drucker
druckerl@dicksteinshapiro.com
Cindy Yang
yangc@dicksteinshapiro.com
Bryan N. DeMatteo
dematteob@dicksteinshapiro.com
**DICKSTEIN SHAPIRO LLP**
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

**ATTORNEYS FOR PLAINTIFF
BALTHASER ONLINE, INC.**

22

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to FED. R. CIV. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. mail, on this March 4, 2009.


                                            */s/ John Garvish*
                                          John F, Garvish, II