**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| BALTHASER ONLINE, INC., <br><br> Plaintiff, <br><br> v. <br><br> NETWORK SOLUTIONS, LLC, THE KNOT, INC., INSIDER GUIDES, INC., CYWORLD INC., FRIENDFINDER NETWORKS, INC., HI5 NETWORKS, INC., FREEWEBS, INC., GAIA INTERACTIVE INC., FRIENDSTER, INC., EBAUM'S WORLD, INC., PUMA INTERNATIONAL, LLC, IMEEM, INC., SCRIPPS NETWORKS, LLC, LIVE JOURNAL INC., NIKE, INC., NING, INC., SWATCHBOX TECHNOLOGIES, INC., ELECTRONIC ARTS INC., HOOKUMU INC., MEREDITH CORP., and CAPCOM USA, INC., <br><br> Defendants. | Civil Action No. 2:08-cv-430 <br><br><br> **(JURY TRIAL DEMANDED)** |

**CALIFORNIA DEFENDANTS' JOINT REPLY
IN SUPPORT OF THEIR MOTION
TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)**

## TABLE OF CONTENTS

**Page**(s)

I.   THE THREE SMALL TEXAS DEFENDANTS SHOULD NOT BE CONSIDERED IN DETERMINING TRANSFER ........................................................... 1

    A.   Art Star Design LLC Cannot Proceed Without Counsel ....................................... 2

    B.   Because Balthaser Drafted the Art Star and Interaria Declarations, They Should Not Be Afforded Any Weight in the Transfer Analysis ........................... 3

    C.   Venue Is Likely Improper as to Art Star and Interaria ......................................... 3

    D.   ShameBlame.com and Art Star Appear to Have Gone Out of Business ............... 5

II.  BALTHASER CANNOT REBUT THE STRONG SHOWING THAT THE PUBLIC AND PRIVATE INTEREST FACTORS FAVOR TRANSFER ....................... 5

    A.   The Convenience of the Vast Majority of Parties and Witnesses Favors Transfer .................................................................................................................. 5

    B.   Plaintiff's Shipment of Litigation Documents to Texas Is Irrelevant to the Sources of Proof Factor ........................................................................................ 8

    C.   Compulsory Process Over the Only Identified Potential Third Party Witnesses Favors Transfer ................................................................................... 8

    D.   Balthaser's Retention of Counsel in Marshall Cannot Support Transfer .............. 9

    E.   The Northern District of California Has a Vastly Stronger Local Interest in This Dispute Than the Eastern District of Texas ................................................ 10

    F.   Balthaser's Cited Statistics on Court Congestion are Outdated and Cannot Support Transfer. ................................................................................................ 11

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Delce v. AMTRAK*,
    180 F.R.D. 316 (E.D. Tex. 1998)..................................................................................2

*Donovan v. Road Rangers Country Junction, Inc.*,
    736 F.2d 1004 (5th Cir. 1984) ......................................................................................4

*Fifth Generation Computer Corp v. IBM*,
    2009 U.S. Dist. LEXIS 12502 (E.D. Tex. Feb. 13, 2009) ..........................................10

*Frederick v. Advanced Fin. Solutions, Inc.*,
    558 F. Supp. 2d 699 (E.D. Tex. 2007)........................................................................11

*FUL Inc. v. Unified Sch. Dist. No. 204*,
    839 F. Supp. 1307 (N.D. Ill. 1993) .........................................................................9, 12

*In re K.M.A., Inc.*,
    652 F.2d 398 (5th Cir. 1981) .......................................................................................2

*In re Toyota Motor Corp.*,
    No. 08-41323 (5th Cir. Dec. 19, 2008) ........................................................................9

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008).....................................................................................1

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008), *cert. denied*, 2009 U.S. LEXIS 1555 (Feb. 23, 2009) .........8, 10

*Invitrogen Corp. v. Gen. Elec. Co.*,
    2009 U.S. Dist. LEXIS 9127 (E.D. Tex. Feb. 9, 2009) ............................................7, 9, 10, 11

*MHL TEK, LLC v. Nissan Motor Co.*,
    2009 U.S. Dist. LEXIS 13676 (E.D. Tex. Feb. 23, 2009) ..........................................6, 7, 9, 11

*Michod v. Walker Magnetics Group, Inc.*,
    115 F.R.D. 345 (N.D. Ill. 1987)....................................................................................4

*Mink v. AAAA Dev. LLC*,
    190 F.3d 333 (5th Cir. 1999) .......................................................................................5

*Novartis Vaccines and Diagnostics, Inc. v. Hoffman-La Roche, Inc.*,
  2009 U.S. Dist LEXIS 14656 (E.D. Tex., Feb. 3, 2009) ............................................7, 8, 9, 12

*Odom v. Microsoft Corp.*,
  2009 U.S. Dist. LEXIS 9835 (E.D. Tex. Jan. 30, 2009) ............................................................6

*Reid v. GMC*,
  240 F.R.D. 260 (E.D. Tex. 2007)..............................................................................................2

*S.C. Johnson & Son v. Gillette Co.*,
  571 F. Supp. 1185 (N.D. Ill. 1983) .......................................................................................8, 9

*Sanofi-Aventis v. Synthon Holding BV*,
  2008 U.S. Dist. LEXIS 28529 (M.D.N.C. Mar. 20, 2008) .......................................................4

*Southland Contracting, Inc. v. Calstar, LLC*,
  2001 U.S. Dist. LEXIS 16523 (N.D. Tex. Oct. 10, 2001) ........................................................2

*Southwest Airlines Co. Profit Sharing 401(k) Comm. v. UBS Global Asset Mgmt.*,
  2007 U.S. Dist. LEXIS 6522 (N.D. Tex. Jan. 29, 2007) ...................................................11, 12

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
  917 F.2d 1574 (Fed. Cir. 1990)................................................................................................4

*Williams v. Toyota Motor Corp.*,
  2008 U.S. Dist. LEXIS 99367 (E.D. Tex. Dec. 9, 2008).........................................................9

**STATUTES**

28 U.S.C. § 1400(b) ........................................................................................................................4

28 U.S.C. § 1404(a) ........................................................................................................................1

28 U.S.C. § 1407..............................................................................................................................2

**OTHER AUTHORITIES**

Fed. R. Civ. P. 20(a) .......................................................................................................................2

Fed. R. Civ. P. 21............................................................................................................................2

Balthaser's Opposition completely ignores the fact that *twelve Defendants plus Balthaser itself are located in the requested transferee venue*. Nor does Balthaser deny that the Eastern District of Texas is home to just *one* party. These facts are precisely why transfer is warranted. This action is undeniably northern California-focused and for the convenience of the parties and witnesses and in the interest of justice, should be transferred to the Northern District of California.

Because the public and private interest factors relevant to the 28 U.S.C. § 1404(a) analysis are so strongly in favor or transferring this action, Balthaser has attempted to skew those factors by adding four Texas-based defendants—who were all added *after* the Federal Circuit issued the *TS Tech* decision (*In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008)), and *after* a number of parties signaled their intent to move for transfer.[1] Indeed, Balthaser concedes that its "best evidence" against transfer hinges on the objections of three of these defendants (the fourth has not appeared). Dkt. No. 206 at 3. Yet, only one is even located in the Eastern District of Texas. If Balthaser can evade transfer after adding a single party from the Eastern District, businesses in this district will needlessly become regular guest stars in future patent suits—and perhaps disproportionately those small businesses lacking in resources to resist an expensive patent claim. Balthaser also apparently obtained this "best evidence" by *itself* drafting declarations for two tiny Defendants after learning that neither could afford counsel. These small businesses should not be considered at all, for several reasons.

**I.   THE THREE SMALL TEXAS DEFENDANTS SHOULD NOT BE CONSIDERED IN DETERMINING TRANSFER.**

Contrary to Balthaser's assertion, the three small Texas Defendants should not be

---

[1] Balthaser states, disingenuously, that the moving defendants consented to Balthaser's addition of the Texas companies "without opposition." In fact, Defendants agreed not to oppose Balthaser's motion to add them because courts grant leave to amend freely at such an early phase of an action, but expressly conditioned their consent upon Balthaser's inclusion of language of non-waiver and a reservation of rights. Plaintiff, however, omitted the language of non-waiver from its motion to file the First Amended Complaint. *See* Reply Declaration of Michael J. Sacksteder ("Sacksteder Dec.") Ex. 1 at 1-2.

considered in the transfer analysis.[2] The *pro se* appearance of at least Art Star should have no effect, nor should the Court give weight to declarations drafted *by* Balthaser's counsel for the unrepresented Defendants Art Star and Interaria. Since venue is also likely improper in this district as to these businesses, any purported inconvenience to them is not relevant to transfer. The third such Defendant, shameblame.com, has not answered or otherwise appeared to date and appears to have gone out of business. Art Star has also recently suspended its operations.

### A.     Art Star Design LLC Cannot Proceed Without Counsel.

Although the owner of Art Star, Mr. Ryan Bishop, has attempted to represent his business *pro se,* "a corporation as a fictional person can only be represented by licensed counsel." *In re K.M.A., Inc.*, 652 F.2d 398 (5th Cir. 1981); *see also Southland Contracting, Inc. v. Calstar, LLC*, 2001 U.S. Dist. LEXIS 16523 (N.D. Tex. Oct. 10, 2001) (unlawful for defendant, a limited liability company, to proceed *pro se*). Mr. Bishop has stated that Art Star cannot afford representation in this action. *See* Dkt. No. 192 (Feb. 20, 2009) at 1. Without counsel to appear on behalf of his limited liability corporation, the Court should either enter default against Art Star or dismiss or otherwise sever it from this action. Art Star is unlikely to remain in the case through trial and should have no effect on the venue analysis.

---

[2] In the event the Court determines that the presence of **any** Texas Defendant in this action warrants denial of transfer, Balthaser's claims against such Texas Defendants should be severed, pursuant to Federal Rule of Civil Procedure 21, and the remainder of the action transferred. Severance of claims is the "judicial tool of choice" to allow transfer of claims against certain defendants to a more convenient venue. *Delce v. AMTRAK*, 180 F.R.D. 316, 319-320 (E.D. Tex. 1998). Further, Balthaser's amalgamated pleading does not comport with the requirements for permissive joinder. *See* Fed. R. Civ. P. 20(a). Where a plaintiff alleges infringement of the same patent against multiple, unrelated defendants on the basis of different products, courts have consistently found misjoinder. *Reid v. GMC*, 240 F.R.D. 260 (E.D. Tex. 2007) ("allegations of patent infringement against two unrelated parties based on different acts do not arise from the same transaction") (citation omitted). Balthaser has not alleged any relation between the Texas Defendants and the non-Texas Defendants, and has admitted that the Texas Defendants are unrelated to the other Defendants. Sacksteder Dec. Ex. 1 at 5, 6. Balthaser should not be permitted to effectively create a multi-district litigation in its chosen forum without bothering to adhere to the procedural safeguards provided by the rules governing multi-district litigation. *See* 28 U.S.C. § 1407.

### B.  Because Balthaser Drafted the Art Star and Interaria Declarations, They Should Not Be Afforded Any Weight in the Transfer Analysis.

The apparent involvement of Balthaser's counsel in securing declarations from Art Star and Interaria, which is also proceeding *pro se*,[3] cautions against weighing them in the instant analysis. The footer on the Shields Declaration, "DOCSNY-349204," is similar to the footer in the declaration of Balthaser's attorney, Bryan N. DeMatteo ("DOCSNY-352249v01"), and the Bishop and Shields declarations are nearly identical in form and substance. *Compare* Dkt. Nos. 204-22, 204-23 *with* 204-2. While there may not be ethical prohibitions against Plaintiff's counsel assisting unrepresented defendants in submitting materials to the Court,[4] the declarations concede that Balthaser discussed ***settlement and transfer*** in the same conversation with each Defendant, after learning that neither was represented by counsel. Shields Dec. ¶¶ 9, 10, Bishop Dec. ¶¶ 9, 10. Under such circumstances, materials drafted and submitted by Plaintiff for the "benefit" of unrepresented, unsophisticated adverse parties following a conversation that also related to settlement should receive no weight. While Interaria and Art Star are entitled to submit their opinions on venue to the Court, their positions should be informed and submitted by disinterested counsel—not counsel for the party responsible for dragging the Defendants into this action in the first place.[5]

### C.  Venue Is Likely Improper as to Art Star and Interaria.

Although Art Star and Interaria purport to admit that venue is proper in the Eastern

---

[3] *See* Dkt. No. 217 (Mar. 12, 2009).

[4] Balthaser also filed motions for Interaria and Art Star seeking extensions of time for them to answer the First Amended Complaint, in which it represented, apparently incorrectly, that *counsel* for Interaria and Art Star had requested the extensions. *See* Dkt. No. 186 (Feb. 11, 2009); Dkt. No. 178 (Feb. 9, 2009).

[5] To the extent that Balthaser is suggesting that the Defendants acted improperly by contacting the Texas parties to ask their position on transfer, the facts do not support such allegations. Unlike Plaintiff, the California Defendants did not ask either to appear in support of the Defendant's joint motion. Defendants also allowed for the possibility that the newly added Texas Defendants might object to transfer (although none had as of the time of filing of the Motion) and did not premise their arguments on the Texas parties' positions. *See* Dkt. No. 168 at 3 n.5, 17-23; Dkt. No. 206 at 3 n.2; Sacksteder Dec. ¶ 5.

District of Texas in their *pro se* answers, such a conclusion is likely incorrect. If venue is not proper as to one or both of these Defendants, they should be dismissed or severed from this case and should not be considered in the transfer analysis.

Patent suits may be brought in the district (1) where a defendant has committed acts of infringement and has a regular and established *place of business*, or (2) where it resides. 28 U.S.C. § 1400(b). None of these three parties appears or is alleged to have an "established place of business"—or any presence—in the Eastern District of Texas, and business solicitation alone is insufficient to establish venue. *See Michod v. Walker Magnetics Group, Inc*., 115 F.R.D. 345 (N.D. Ill. 1987) (noting "established place of business" requires an actual *place* of business in the judicial district, activities such as the solicitation of orders are not enough). Thus, venue will only be proper if each Defendant "resides" in this district, and this requirement is not satisfied unless the party has sufficient contacts in the district to subject it to personal jurisdiction if the district were treated as a separate state. *See VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1583-84 (Fed. Cir. 1990); *see also Sanofi-Aventis v. Synthon Holding BV*, 2008 U.S. Dist. LEXIS 28529, at *18-19 (M.D.N.C. Mar. 20, 2008).

Accordingly, the purported admissions of these Defendants' non-attorney representatives that venue is proper should not bind them, as they appear unlikely even to understand the meaning of a federal "judicial district."[6] If Art Star and Interaria do not conduct relevant business within in the Eastern District of Texas, then their web sites—which only advertise their

---

[6] The legal conclusions in Interaria's and Art Star's answers, filed *pro se* and without representation, should be disregarded as deficient (particularly for Art Star). *See Donovan v. Road Rangers Country Junction, Inc.,* 736 F.2d 1004, 1005 (5th Cir. 1984) (concluding that it was proper for the district court to strike the defenses of a corporation that appeared without counsel). Alternatively, each should be granted leave to amend their answer to assert an objection to venue, if proper, because the non-attorney owners of these companies appear not to understand the legal requirements for venue or how a boundaries of a "judicial district" differ from the geographic boundaries of the state. *See* Sacksteder Dec. Ex. 2 at 1 (Mr. Shields stated "I just found out I live in Northern District of Texas (little did I know)"); *id.* Ex. 3 (Mr. Bishop requested advice on legal questions). Interaria's owner also asked *Balthaser* to assist in preparing its response. DeMatteo Dec. Ex. 2, Dkt. No. 204-4, at 1. If Balthaser did in fact assist Mr. Shields, any implicit admissions in the answer should not be held against his company.

web *design* services—are unlikely to subject them to personal jurisdiction in this District. *See* Sacksteder Dec. Exs. 4-6. Personal jurisdiction is lacking where a defendant maintains a passive web site that merely posts information about its products and services. *See, e.g., Mink v. AAAA Dev. LLC*, 190 F.3d 333 (5th Cir. 1999). Because venue is likely improper, these Defendants' purported convenience is thus irrelevant to the transfer analysis.

### D. ShameBlame.com and Art Star Appear to Have Gone Out of Business.

ShameBlame.com, the third small business, has not answered and its web site states that it shut down in response to Balthaser's infringement claims. *See Id.* Exs. 7-8. Art Star has also announced that it is suspending its operations effective March 17, 2009. *Id.* Ex. 5. Accordingly, the location of "ShameBlame.com" and Art Star should not be considered in the venue analysis.

## II. BALTHASER CANNOT REBUT THE STRONG SHOWING THAT THE PUBLIC AND PRIVATE INTEREST FACTORS FAVOR TRANSFER

### A. The Convenience of the Vast Majority of Parties and Witnesses Favors Transfer.

Balthaser's opposition is decidedly one-sided concerning the convenience of witnesses and parties. After criticizing Defendants for ignoring the non-California Defendants in its motion (which they do not), Balthaser *omits* every single west-coast Defendant from its purported calculation of the "Average Increase [in miles] If Transferred." Dkt. No. 206 at 7. Counting all of the Defendants, the average and total distance to all parties would *decrease significantly* if this action were transferred to the Northern District of California. Further, counting Balthaser and not including the three small Texas Defendants in the calculation, the distance between the venue and each party would decrease by approximately 340 miles if the action were transferred, and the "total" distance to the parties would decrease by over 9,000 miles, as shown in the following table, which is based on the chart shown in Exhibit 9 of the Sacksteder Declaration:

| Average change in distance from Courthouse if action is transferred: | | Total change in distance from Courthouse if action is transferred: | |
|---|---|---|---|
| For all defendants | -138 | For all defendants | -3851 |
| For all parties excluding Art Star, Interaria, and Shameblame.com | -348 | For all parties excluding Art Star, Interaria, and Shameblame.com | -9061 |

Note: Calculations based on distances from principal place of business to courthouse for parties located over 100 miles away from courthouse. Distances determined using http://www.infoplease.com/atlas/calculate-distance for consistency with Balthaser. All calculations include Big Jump Media.

*Fourteen Defendants* are located much closer to the Northern District of California than the Eastern District of Texas. That the remaining eleven (excluding the small Texas Defendants) are scattered about the country does not negate the overwhelming gains to convenience effected by transfer. Indeed, despite Plaintiff's unsupported accusation that this "self-serving" claimed increase in convenience is "simply not credible" (Dkt. No. 206 at 14 n.7) **not one Defendant that is located outside of Texas objects to transfer**.[7] On these facts, transfer would result in an overall increase in convenience to the parties and their likely witnesses.[8]

The sheer concentration of parties in and near the proposed transferee venue, coupled with the absence of any similar concentration elsewhere, distinguishes this case from other recent cases denying transfer. For example, in *MHL TEK*, just two parties were located within the requested transferee forum (in Michigan), four were in Germany, three were in California, and the remaining twelve were scattered in ones and twos across Asia and the United States. *MHL TEK, LLC v. Nissan Motor Co.*, 2009 U.S. Dist. LEXIS 13676, at *6 (E.D. Tex. Feb. 23, 2009). The Court in that action thus found, based on calculated distances, that the Eastern District of Texas was "more centrally located" to witnesses than the proposed transferee venue, but that

---

[7] Balthaser's argument that certain parties, including Nike, have previously sought to maintain actions in this venue is irrelevant. *See Odom v. Microsoft Corp.*, 2009 U.S. Dist. LEXIS 9835, at *17 n.5 (E.D. Tex. Jan. 30, 2009) (granting defendant's motion to transfer venue, the court reasoned that "given the fact specific nature of venue transfer analysis, it is unlikely that [defendant's] prior litigation in this District would be highly relevant to the analysis in this case"). Puma North America, Inc., has also joined the motion to transfer. Dkt. No. 238 (Mar. 23, 2009).

[8] Tellingly, Balthaser does not, and cannot credibly contend that it would be *inconvenienced* by transfer to the Northern District of California, or deny that Balthaser's sole location is in San Francisco. Declaration of Neil Balthaser, Dkt. No. 204-21, ¶ 3.

6

same factual circumstance does not exist here.

In *Novartis Vaccines and Diagnostics, Inc. v. Hoffman-La Roche Inc.*, unlike this case, transfer would have increased the total distance to the identified witnesses by nearly 700 miles. 2009 U.S. Dist LEXIS 14656, at *15 (E.D. Tex., Feb. 3, 2009); *see also* No. 2:07-cv-507, Dkt. No. 86 at Table 1 (E.D. Tex. Jan. 16, 2009). Further, the home offices of the parties in that matter were located **one each** in California, Colorado, and North Carolina, and just **two** in New Jersey; the defendants were also related entities with a role in the development and commercialization of a *single* accused product. *Novartis*, 2009 U.S. Dist LEXIS 14656, at *7.

In contrast to those cases, here the proposed transferee venue is **home** to a large proportion of the parties, including the Plaintiff, and therefore to their likely witnesses. *See* Dkt. No. 168 at 19-23. Further, the accused infringers here generally are unrelated parties and will be expected to put up their own witnesses and evidence at least on issues of non-infringement and damages that are specific to each accused web site.

Balthaser incorrectly asks the Court to require that transfer increase the convenience of *every* witness and *every* party. Dkt. No. 206 at 2. But that would ignore the increased convenience transfer would bring to the *majority* of the parties, and Balthaser's proposed rule is unsupported by the decisions of this district. Although courts in this district have considered the convenience of all parties, none has required a showing that transfer would in fact be more convenient for every single individual party. *See Invitrogen Corp. v. Gen. Elec. Co.*, 2009 U.S. Dist. LEXIS 9127, at *10 (E.D. Tex. Feb. 9, 2009) (finding this factor *favored transfer* where transfer would be more convenient for two "classes" of witnesses but *less* convenient for one class); *MHL TEK*, 2009 U.S. Dist. LEXIS 13676, at *19 (considering whether either venue would be "more convenient to a *majority* of witnesses") (emphasis added); *Novartis*, 2009 U.S. Dist. LEXIS 14656, at *16 (noting that "this Court is not prepared to find that nationwide suits— such as this one—must be litigated in a centralized venue"). This Court should decline Balthaser's invitation to create a rule that would allow patent plaintiffs to defeat transfer simply by targeting a single alleged infringer that resides in the Eastern District of Texas.

7

> B. **Plaintiff's Shipment of Litigation Documents to Texas Is Irrelevant to the Sources of Proof Factor.**

Balthaser asks this Court to consider the location of documents it has shipped to local counsel in Marshall, Texas, in weighing the accessibility to sources of proof. Dkt. No. 206 at 8. But doing so would impermissibly treat Balthaser's choice of venue as a factor in the analysis, in violation of the Fifth Circuit's dictate to the contrary. *See In re Volkswagen of Am., Inc.,* 545 F. 3d 304, 310 n. 10 (5th Cir. 2008), *cert. denied*, 2009 U.S. LEXIS 1555 (Feb. 23, 2009) ; *Novartis*, 2009 U.S. Dist. LEXIS 14656, at *10-11 (finding this factor favored transfer *even if* the Court ignored documents shipped to district in anticipation of litigation). And, if Plaintiff's shipment is counted, then no less weight should be given to Defendants' movement of documents. Counsel for at least fifteen Defendants are located in the Northern District of California. Sacksteder Dec. ¶ 10. As these Defendants' documents are likely to be in that venue to begin with, or likely will be sent to counsel in California for review at an appropriate time in the litigation, well more than half of the Defendants' documentary evidence is likely be located in the Northern District of California prior to trial.

Further, Balthaser again ignores the fact that fourteen of the Defendants' documents and sources of proof are currently located in or nearby the Northern District of California. It would present only a slightly greater burden for the remaining non-Texas Defendants to make documents available for proceedings in California, and in fact none of them have objected to transfer. *See S.C. Johnson & Son v. Gillette Co.*, 571 F. Supp. 1185 1188 (N.D. Ill. 1983) (noting it would present only a slightly greater burden for plaintiff to make documents located in Wisconsin available for proceedings in Boston as compared to Chicago).

> C. **Compulsory Process Over the Only Identified Potential Third Party Witnesses Favors Transfer.**

Balthaser does not dispute that the only potential third-party witnesses identified to date relate to the Yahoo! prior art. Dkt. No. 206 at 9-12. Nor does Balthaser contest that Yahoo!'s corporate offices are located within the Northern District of California, and that therefore witnesses who are likely to be able to testify about this prior art would likely be located in the

Northern District of California. *Id.* at 11-12. Balthaser's claim that this factor can only weigh in favor of transfer if the transferee court would enjoy "absolute subpoena power over all witnesses" is contradicted by recent decisions in this District. *See Invitrogen,* 2009 U.S. Dist. LEXIS 9127, at *11 (finding this factor weighed slightly in favor of transfer where the defendant identified four potential non-party witnesses, two of whom were located in the transferee venue and none of whom were located in the Eastern District of Texas). Further, in *Novartis*, this Court determined that the transferee venue in North Carolina would merely have subpoena power over a "*handful* of potential witnesses" but not other important witnesses identified by the plaintiff. *Novartis*, 2009 U.S. Dist. LEXIS 14656, at *13-14. In contrast, here, the Northern District of California is the only venue with subpoena power over the likely third party witnesses identified to date.[9]

Balthaser is also incorrect in its attempt to focus this factor on party witnesses. Courts generally assume that witnesses within the control of a party, such as employees, will appear voluntarily, and accordingly limit the consideration of this factor to potential non-party witnesses. *See, e.g.*, *FUL Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1311-12 (N.D. Ill. 1993). There is simply no reason to believe that any of the Defendants will refuse to make available their key witnesses for trial in the Northern District of California, and accordingly the availability of compulsory process for party witnesses is not relevant to this factor.

      **D.**      **Balthaser's Retention of Counsel in Marshall Cannot Support Transfer.**

Balthaser makes the wholly unsupported assertion that because it has hired local counsel, this "investment" should weigh against transfer. Balthaser cites no legal authority in support of this argument, and Defendants are aware of none. *Cf. MHL TEK*, 2009 U.S. Dist LEXIS 13676, at *18 n.5 (noting "[t]he court has not considered the location of counsel in this analysis").

---

[9] Plaintiff's reliance on *Williams v. Toyota Motor Corp.*, 2008 U.S. Dist. LEXIS 99367 (E.D. Tex. Dec. 9, 2008), denying a motion to transfer, is also misplaced, as the 5th Circuit has since issued a writ of mandamus directing the district court to grant the motion and the case has been transferred. *See In re Toyota Motor Corp.*, No. 08-41323 (5th Cir. Dec. 19, 2008); Sacksteder Dec. Ex. 10 (attaching order).

Giving weight to this argument would also, once again, amount to impermissibly counting Balthaser's choice of venue as a distinct factor in the analysis. Further, if the Court were to deem the location of counsel an appropriate factor for consideration, then this factor would weigh heavily in favor of transfer, since counsel for fifteen Defendants are located in the Northern District of California.

### E. The Northern District of California Has a Vastly Stronger Local Interest in This Dispute Than the Eastern District of Texas.

Balthaser incorrectly asserts that activities in other judicial districts in Texas create a local interest in this case in this District. Dkt. No. 206 at 18. *Volkswagen* makes clear that the "local" interest means just that—the local district's actual interest in the events that give rise to a claim, not a vaguely asserted "state's" interest based on activities in other judicial districts. *In re Volkswagen of Am., Inc.*, 545 F.3d at 317-18 (5th Cir. 2008) (localized interests factor weighed in favor of transfer from Marshall, Texas based on connections to Dallas, Texas); *see also Fifth Generation Computer Corp v. IBM*, 2009 U.S. Dist. LEXIS 12502, *16-17 (E.D. Tex. Feb. 13, 2009) (discounting relevance of defendant's facility located in the Southern District of Texas on motion to transfer from Eastern District). The location of companies in the Western and Northern Districts of Texas thus do not create a "local interest" in this case in the Eastern District of Texas. Nor does it matter whether other Defendants have retail sales offices or employees (which relate to sales of unaccused products) or Internet servers, or have exhibited at trade shows in other judicial districts in Texas. *See* Dkt. No. 206 at 20. Balthaser's reliance on such facts underscores the absence of any support for its position or connection with this District.[10]

---

[10] Prior litigation in this district by any Defendant is also irrelevant. *See Invitrogen*, 2009 U.S. Dist. LEXIS 9127, at *16 ("[no] authority . . . holds that prior litigation history contributes to a local interest in the outcome of a patent case"). Balthaser also makes too much of the fact that Defendants FriendFinder California, Inc. and Various, Inc. have "admitted" in prior actions tried in this district to doing business in Texas with *respect to their allegedly infringing websites*. See Dkt. No. 206 at 19-20. This is no more than a rehashing of its infringement contentions, which accuse the Defendants of "operating website" in the Eastern District of Texas. FAC ¶¶ 40-41. Balthaser's attempt to refashion this now oft-rejected argument must fail; whether accused products and services are available in this district does not establish a local connection to it.

10

In contrast, a greater localized interest in an action exists in the judicial district where the parties' relevant business operations are located. *See MHL TEK*, 2009 U.S. Dist. LEXIS 13676, at *29-30 (finding this factor favored transfer where one of the defendants and the plaintiff operated out of Michigan). This is true even when the accused products are accessible nationwide. *See Invitrogen*, 2009 U.S. Dist. LEXIS 9127 at *16 ("Nonetheless, where a forum has identifiable connections to the events giving rise to the suit, this factor may support litigating the case in that forum.").

Here, the relevant business operations of twelve Defendants and the Plaintiff are within the proposed transferee venue. Balthaser's only counterweight is the existence of a single late-added Defendant (Plano's Big Jump Media), unrelated to any of the others, located in the Eastern District of Texas. Balthaser cannot logically argue that Big Jump Media's existence in this district creates a "substantial" local interest here, while simultaneously denying a much greater local interest in the Northern District of California.

### F.    Balthaser's Cited Statistics on Court Congestion are Outdated and Cannot Support Transfer.

To support its contention that administrative concerns weigh against transfer, Balthaser cites a 2008 Price Waterhouse Coopers ("PWC") survey reporting a single time-to-trial statistic for patent cases during the thirteen-year period from 1995 to 2007. DeMatteo Dec. Ex. 14, Dkt. No. 204-16. The statistic is out-of-date, considering the **466%** increase in patent cases filed in the Eastern District of Texas during the past five years, as opposed to a mere **43**% increase in the Northern District of California during the same period according to data from the Stanford Law School. *See* Sacksteder Dec. ¶ 12, Ex. 11. The PWC statistic cannot be presumed to accurately state current conditions in light of these substantial recent increases in filings.

Contrary to Balthaser's contentions, courts in this district do weigh time-to-disposition and court congestion against median time-to-trial data. *See, e.g., Frederick v. Advanced Fin. Solutions, Inc.*, 558 F. Supp. 2d 699, 706 (E.D. Tex. 2007); *Southwest Airlines Co. Profit Sharing 401(k) Comm. v. UBS Global Asset Mgmt.*, 2007 U.S. Dist. LEXIS 6522, at *14-15

11

(N.D. Tex. Jan. 29, 2007) ("[T]he court finds that the competing considerations of one court's slightly faster median disposition time and the other's slightly less congested docket render this factor neutral."). Because of the significant recent increases in patent case filings in this District, The Northern District of California is currently less congested with patent cases than the Eastern District of Texas. There are approximately 34 open patent cases per judge in the Eastern District of Texas, versus approximately 12 per judge in the Northern District of California. Sacksteder Dec. ¶¶ 14-15, Exs. 13-14. Balthaser does not dispute that the Northern District of California has a shorter median time-to-disposition of all cases (Dkt. No. 206 at 16-17); it also appears to have a slightly shorter median time-to-disposition of *patent* cases filed since 2000. Sacksteder Dec. ¶¶ 14-15, Exs. 13-14. These conflicting statistics render this factor neutral.

Further, for all patent cases filed since 2000, time-to-trial statistics vary much more judge to judge in the Northern District of California than in the Eastern District of Texas. *See* Sacksteder Dec. ¶ 16, Exs. 13-14. It is not possible to accurately predict which venue would actually result in a speedier conclusion of each of Balthaser's many claims; this also renders the administrative concerns factor neutral. *See FUL*, 839 F. Supp. at 1313 (finding this factor neutral in light of conflicting median time-to-trial and median time-to-disposition statistics).

Finally, any delay and prejudice associated with transfer of this action, which is in its earliest stages and in which discovery has not yet commenced, is not relevant to the venue transfer analysis. *Novartis*, 2009 U.S. Dist. 14656, at *16 (such delay is only relevant "in rare and special circumstances") (citation omitted).

Dated: March 23, 2009                               Respectfully submitted,


  /s/ Michael J. Sacksteder
Darryl M. Woo, CA Bar No. 100513
Michael J. Sacksteder, CA Bar No. 191605
Candace J. Morey, CA Bar No. 233081
**FENWICK & WEST LLP**
555 California Street, 12th Floor
San Francisco, CA 94104
Phone: (415) 875-2300
Fax: (415) 281-1350
dwoo@fenwick.com
msacsteder@fenwick.com
cmorey@fenwick.com

ATTORNEYS FOR DEFENDANTS
FRIENDFINDER CALIFORNIA, INC.,
VARIOUS, INC., GLOBAL ALPHABET,
INC., AND CAPCOM USA

  /s/ *Ira P. Rothken*
Ira P. Rothken, CA Bar No. 160029*
**ROTHKEN LAW FIRM**
3 Hamilton Landing, Suite 280
Novato, CA 94949
415/924-4250
Fax: 14159242905
Email: ira@techfirm.net
(*admitted pro hac vice*)

ATTORNEYS FOR DEFENDANTS
FRIENDFINDER CALIFORNIA, INC.,
VARIOUS, INC., AND GLOBAL
ALPHABET, INC.,

/s/ *Timothy S. Teter*
Timothy S. Teter, CA Bar No. 171451
Iain R. Cunningham, CA Bar No. 232357
**COOLEY GODWARD KRONISH LLP**
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Phone: (650) 843-5000
Fax: (650) 857-0663
tteter@colley.com
jcunningham@colley.com

ATTORNEYS FOR DEFENDANT HI5 NETWORKS, INC.

/s/ *Jerry R. Selinger*
Jerry R. Selinger
**PATTERSON & SHERIDAN LLP**
1700 Pacific, Suite 2650
Dallas, TX 75201
Email: jselinger@pattersonsheridan.com
Email: tackermann@pattersonsheridan.com

Monique Raub
**PATTERSON & SHERIDAN, LLP** -
3040 Post Oak Blvd., Suite 1500
Houston, TX 77056
Email: mraub@pattersonsheridan.com

ATTORNEYS FOR DEFENDANTS FRIENDSTER, INC.

/s/ *Wayne M. Barsky*
**GIBSON, DUNN & CRUTCHER LLP**
Wayne M. Barsky, CA Bar No. 116731*
David A. Segal, CA Bar No. 166635
Sarah E. Piepmeier, CA Bar No. 227094*
Alison R. Watkins, CA Bar No. 253023*
555 Mission Street, Suite 3000
San Francisco, CA  94105
Telephone:    (415) 393-8200
Facsimile:    (415) 374-8404
wbarsky@gibsondunn.com
dsegal@gibsondunn.com
spiepmeier@gibsondunn.com
awatkins@gibsondunn.com

(*admitted pro hac vice*)

ATTORNEYS FOR DEFENDANTS CYWORLD INC., ELECTRONIC ARTS INC., GAIA INTERACTIVE INC., IMEEM, INC., LIVE JOURNAL INC., AND NING, INC.

## CONSENT TO FILE ON BEHALF OF LEAD ATTORNEYS

I, Michael J. Sacksteder, attest that concurrence in the filing of this document and the supporting declarations related to California Defendants' Joint Reply In Support Of Their Motion To Transfer Venue Under 28 U.S.C. § 1404(a) has been obtained from counsel for the above co-signing Defendants.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of March , 2009 in San Francisco, California.

*/s/ Michael J. Sacksteder*
Michael J. Sacksteder

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who have consented to electronic service, Local Rule CV-5(a)(3)(A), on this the 23rd day of March.

Dated: March 23, 2009                                              Respectfully submitted,


  /s/ Michael J. Sacksteder

Michael J. Sacksteder, Bar No. 191605
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104

ATTORNEYS FOR DEFENDANTS